UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>AUTO SALES & SERVICE, INC.,<br><br>      Debtor. | Chapter 11<br>Case No. 10-14528-JNF |
| In re:<br><br>GENERAL TRADING COMPANY,<br><br>      Debtor. | Chapter 11<br>Case No. 10-14532-JNF |
| In re:<br><br>FRANK SAWYER CORPORATION,<br><br>      Debtor. | Chapter 11<br>Case No. 10-14533-JNF |
| In re:<br><br>100 STUART STREET LLC,<br><br>      Debtor. | Chapter 11<br>Case No. 10-14534-JNF |
| In re:<br><br>SW BOSTON HOTEL VENTURE LLC,<br><br>      Debtor. | Chapter 11<br>Case No. 10-14535-JNF<br><br>*(Joint Administration Request Pending)* |

**MOTION BY DEBTORS AND DEBTORS-IN-POSSESSION TO
(A) PAY PREPETITION WAGES, SALARIES AND BENEFITS;
AND (B) USE EXISTING PAYROLL ACCOUNTS AND BUSINESS FORMS**
*(Emergency Determination Requested)*

SW Boston Hotel Venture LLC ("SW Boston"), General Trading Company ("General Trading"), Frank Sawyer Corporation ("Sawyer Corporation"), 100 Stuart Street LLC ("Stuart Street") and Auto Sales & Service, Inc. ("Auto Sales" and together with SW Boston, General

Trading, Sawyer Corporation and Stuart Street the "Debtors"),[1] respectfully request the entry of an Order pursuant to Sections 105(a), 363(b), 507(a)(4), 507(a)(5) and 507(a)(8) of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), authorizing, but not directing, the Debtors to pay their employees' prepetition wages, salaries, expenses, and benefits, in an amount not to exceed the priority cap set forth in Section 507(a)(4) of the Bankruptcy Code.

The Debtors also request the authority to pay taxes associated with such wages and salaries, pay benefit claims accruing in favor of its employees, and to use existing payroll accounts and business forms for a limited period of time to enable paychecks relating to prepetition periods of service to be honored in the ordinary course of business.

The Debtors request this relief in order to ensure that the prepetition payroll is paid and honored in the ordinary course of business. The Debtors' business operations will suffer disruption due to the loss of employees and/or harm to employee morale if the Debtors are unable to pay the pre-petition wages in the ordinary course of business. Harm to the Debtors' business operations will harm the Debtors' creditors.

In support of this motion, the Debtors respectfully state as follows:

### JURISDICTION

1.    This Court has jurisdiction to consider and determine this Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The Debtors have, simultaneously with this motion, moved for the joint administration of these cases.

## BACKGROUND

2. On April 28, 2010 (the "Petition Date"), the Debtors filed voluntary petitions under Chapter 11 of 11 U.S.C. § 101, *et seq.* ("Bankruptcy Code") with this Court.

3. The Debtors continue to operate as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code and no trustee or committee has been appointed in these cases.

### A. The Project.

4. The W Boston Hotel and Residences project (the "Project") opened on October 29, 2009, and comprises a 350,650 square foot, 26-story building located at 100 Stuart Street in the heart of Boston's Theatre District. The Project contains the 235–room, four-star Hotel, the 122 condominium units, and a two-level underground parking garage with capacity for 142 vehicles (the "Garage").

5. The Project was designed by the internationally-known architectural firm of William Rawn and Associates Architects, together with the architect of record TRO/Jung Brannen, Inc.

6. The Hotel is branded as a "W" Hotel – the only W Hotel in New England – and serves Boston's many national and international business travelers and tourists. The Hotel is operated by Starwood Hotels and Resorts Worldwide, Inc. ("Starwood") through its affiliate, W Hotel Management, Inc. (the "Hotel Operator"). The Hotel includes a retail store operated by Wink Retail Group, Inc., an affiliate of Starwood, a signature restaurant operated by Cullinary Concepts (Boston) LLC (the "Restaurant Operator") at a prominent location along Tremont Street, and will also include a second floor spa with a first floor entrance and related retail space on the Stuart Street side of the Project (the "Spa"). The Hotel is also planned to include a below-

3

grade theme bar/lounge with an entrance adjacent to the spa entrance on Stuart Street (the "Theme Lounge"). The Spa is in the final stages of construction and the Theme Lounge is planned to open in the fall. The Hotel Operator will operate the Spa and the Theme Lounge.

7.      The Hotel restaurant, Market by Jean-Georges Vongrichten, is a 6,000 square foot, first-class, full-service restaurant that occupies the entire first floor of the Hotel along Tremont Street. Market is an important amenity for the city's visitors and theatre-goers.

8.      The condominium units consist of 122 studio, one (1), two (2) or three (3) bedroom luxury condominium units. The list prices for the condominium units range from $600,000 to over $4,000,000. As of the Petition Date, SW Boston had sold twelve (12) of the condominium units and had entered into binding purchase and sale contracts for eleven (11) units.[2]

**B.     The Debtors.**

9.      SW Boston is a Delaware limited liability company formed by a local family, descendants of the late taxicab/parking businessman Frank Sawyer, to develop and own the Project.

10.     Stuart Street is a Delaware limited liability company that owns 100% of the membership interests in SW Boston. Stuart Street is a single purpose entity formed to own the membership interests in SW Boston.

11.     Sawyer Corporation is a Massachusetts corporation that owns approximately sixty-five percent (65%) of Stuart Street. Sawyer Corporation manages Stuart Street.

---

[2] Details regarding the pending sales are more fully described in the *Debtors' Motion For Authority to (A) Assume And Consummate Pending Purchase And Sale Agreements For Condominium Units; (B) Make And Consummate New Sales For Condominium Units; And (C) For Related Relief*, which has been filed contemporaneously with this motion.

12. General Trading is a Massachusetts corporation all of whose stock is owned by the Trust. General Trading does business as Sawyer Enterprises, and provides administrative services for the Debtors as well as various non-debtor affiliates of the Debtors. The Chief Executive Officer of General Trading is Carol Sawyer Parks, and the Vice President in charge of overseeing the development and operation of the Project is John P. Connolly.

13. Auto Sales is a Massachusetts corporation.

C. **Management of The Hotel And Parking Garage.**

14. The Hotel is managed and operated by the Hotel Operator pursuant to a management contract with SW Boston dated August 23, 2005, as amended (the "Hotel Contract"). Pursuant to the Hotel Contract, the Spa and the Theme Lounge will also be managed and operated by Starwood.

15. Starwood is one of the nation's premier hotel operators. Starwood operates the Westin, St. Regis, and Le Meridian families of hotels, as well as hotel properties operating under the Sheraton and Sherwood banners and 28 first-class hotels carrying the "W" brand. Boston has one of the largest concentrations of Starwood-affiliated hotels in the country, including the Westin Copley Square hotel, Westin Convention Center hotel, and Sheraton hotels, as well as numerous hotels outside of Boston proper.

16. Under the Hotel Contract, the Hotel's revenue (the "Hotel Revenue") is maintained in operating accounts in the name of SW Boston from which the expenses of operating the Hotel, including Starwood's management fee, are paid by Starwood. The employees of the Hotel are employees of Starwood. Starwood disburses to SW Boston the Hotel revenue remaining after the payment of the operating expenses of the Hotel. Pursuant to the

5

Hotel Contract, SW Boston and the Hotel Operator agreed to an annual operating plan prior to the Petition Date, and the Hotel is operating in accordance with that plan.

17.     The Garage is managed and operated by Ultimate Parking, LLC ("Ultimate") pursuant to a contract with SW Boston dated September 30, 2009, as amended (the "Garage Contract").

18.     Under the Garage Contract, the Garage's revenue (the "Garage Revenue") is maintained in an operating account in the name of SW Boston from which the expenses of operating the Garage, including Ultimate's management fee, are paid by Ultimate. The employees of the Garage are employees of Ultimate. Ultimate disburses to SW Boston the Garage revenue remaining after the payment of the operating expenses of the Garage. Pursuant to the Garage Contract, SW Boston and Ultimate agreed to an annual operating plan prior to the Petition Date, and the Garage is operating in accordance with that plan.

### D.     Events Precipitating The Bankruptcy Filings.

19.     The Hotel (including the restaurant) and the Garage opened on October 29, 2009, and have operated at or better than projected. Construction of a portion of the condominium units was completed and closings on those floors commenced immediately. Construction of the remaining floors of the condominium units was completed in January 2010. Sales of the condominium units, however, have been slower than initially projected at the time of the closing of the senior loan on the Project (January 2008) due largely to the nearly unprecedented global economic crisis, the near-collapse of the national capital markets, and the accompanying softening of the residential real estate market.

20.     Prior to the Petition Date, SW Boston had extensive discussions with The Prudential Insurance Company of America, on behalf of and solely for the benefit of, and with its

6

liability limited to the assets of, its insurance company separate account, PRISA ("Prudential") the senior lender on the construction loan for the Project (the "Senior Loan") regarding the restructuring of the Senior Loan to reflect the dramatic downturn in the global economy, the near collapse of the national and international capital markets for commercial real estate and the dramatic downturn in the local real estate market. Prudential declined to restructure its loan on terms acceptable to the Debtor, thereby exposing the Debtors' bank accounts and assets to seizure, forcing the Debtors to file these bankruptcy proceedings in order to preserve the value of their assets and their opportunity to reorganize and restructure the Senior Loan.

### RELIEF REQUESTED

21.     The Debtors seek authority to pay or have honored any outstanding wages and salaries owed to General Trading's employees on the Petition Date including unpaid reimbursable expenses and benefits and vacation pay (collectively, the "Prepetition Wage Obligations"). The Debtors have separate filed a listing of the Prepetition Wage Obligations proposed to be paid and requested that such listing be impounded.[3] The total amount of the Prepetition Wage Obligations is $26,299.68.

22.     The Debtors' employees are employed by General Trading. General Trading provides administrative services for the Debtors and for non-debtor affiliates of the Debtors. General Trading's costs and expenses are allocated among the Debtors and the non-debtor affiliates. As is detailed in the Debtors' request for the use of cash collateral filed contemporaneously with this motion certain non-debtor affiliates will reimburse General Trading for their share of General Trading's administrative services.

---

[3] Included on the list of Prepetition Wage Obligations are certain insiders of the Debtors, including Carol Parks, Hana Parks, Joseph A. Parks and Librada Parks.

7

A.   <u>Wages and Salaries</u>

23.   None of the Prepetition Wage Obligations (inclusive of applicable taxes) exceed the $10,950 priority cap set forth in Section 507(a)(4) of the Bankruptcy Code.

24.   Under standard payroll procedures, General Trading's employees are paid one (1) week in arrears. General Trading last issued payroll checks to its employees on April 27, 2010 for the period ending on April 24, 2010. The Debtors have separately requested authority to utilize General Trading's payroll account following the Petition Date for the purposes, among other things, honoring payroll checks. None of the payroll paid on April 27, 2010, even if added to the Prepetition Wage Obligations, exceed the $10,950 priority cap set forth in Section 507(a)(4) of the Bankruptcy Code.

25.   As of the Petition Date, General Trading has deducted from their employees' paychecks certain payments on behalf of payroll taxes and the employees' portions of FICA and FUTA and all legally ordered wage garnishments and/or domestic support obligations (collectively the "Deductions"). In the ordinary course of business, the Deductions are paid to third parties in accordance with applicable law. The employee portion of the Deductions may constitute trust funds that are not property of the Debtors' bankruptcy estates. In any case, the relevant taxing authorities would hold a priority claim under Section 507(a)(8) of the Bankruptcy Code for the tax portion of the Deductions. In addition, the Debtors' portion of the FICA and FUTA taxes associated with the prepetition payroll also constitute priority claims under Section 507(a)(8) of the Bankruptcy Code and such payments do not prejudice creditors of the Debtors' estates. As a result, creditors will not be prejudiced by the payment of the Deductions or the payment of the employer portions of the FICA and FUTA taxes associated with the prepetition

payroll. Accordingly, the Debtors request authority to pay the Deductions in the ordinary course of their business.

B.   <u>Vacation Pay and Sick Pay</u>

26.   The Debtors request the authority to honor, in the ordinary course of business, earned but unused vacation time and/or sick leave for employees that accrued prior to the Petition Date.

C.   <u>Benefits</u>

27.   The Debtors have established various plans and policies for the benefit of their employees, which include a health plan covering medical insurance and dental insurance, workers' compensation insurance, and a non-matching 401(k) retirement plan (collectively, the "Employee Benefits"). The employees' cost for such Employee Benefits is deducted from their wages.

28.   In the ordinary course of their business the Debtors maintain workers' compensation insurance. Although the premiums on this policy are paid annually in advance, the insurance company can request an audit and adjust any premiums upward or downward. The Debtors seek authority to pay any prepetition amounts that may be owed on account of its workers' compensation policy.

29.   In any event, for each of the foregoing plans, no employee will be paid more than the total number of employees multiplied by $10,950, less the aggregate amount paid to such employees under Section 507(a)(4) of the Bankruptcy Code, plus the aggregate amount to be paid by the estate on behalf of such employees to any other employee benefit plan. <u>See</u> 11 U.S.C. §§ 507(a)(4); 507(a)(5).

D.   <u>Authorization of Banks to Process Payments</u>

9

30. The Debtors have contemporaneously filed the *Motion by The Debtors and Debtors-in-Possession For Order Authorizing Maintenance of Certain of the Debtor's Existing Bank Accounts And Business Forms, and Related Relief* (the "Bank Account Motion") requesting that General Trading's payroll account remain open after the Petition Date so that the Debtors may continue to utilize that account in connection with their business. In accordance with the Bank Account Motion, the Debtors request authority to continue to utilize General Trading's prepetition payroll account and the existing payroll checks and other business forms without alteration or change for the purpose of complying with the relief requested in this motion.

E.   Prepetition Wage Obligations Contemplated by Debtors-in-Possession

31. As set forth above, the Debtors' motion for authorization to use cash collateral filed contemporaneously with this motion contemplates the payments described in this motion, subject to the approval of this Court.

## GROUNDS FOR RELIEF REQUESTED

32. Pursuant to Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code, a debtor's employees' claims for "wages, salaries, or commissions, including vacation, severance and sick leave pay" earned within 180 days before the Petition Date, and claims against the debtor for contributions to employee benefit plans arising from services rendered within 180 days before the Petition Date, are afforded unsecured priority from status to the extent of $10,950 per employee. 11 U.S.C. §§ 507(a)(4), (a)(5). No employee will receive more than $10,950 in Prepetition Wage Obligations. Section 363(b) of the Bankruptcy Code provides that the debtor-in-possession, "after notice and hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 105(a) of the Bankruptcy Code provides, in part, "[t]he court may issue any order, process, or judgment that is necessary

or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). The Prepetition Wage Obligations and the other employee-related obligations set forth in this motion substantially constitute priority claims under Sections 507(a)(4) and (a)(5).

33.     It is crucial that General Trading be permitted to pay the Prepetition Wage Obligations. Approval of such payments will assist in maintaining the continuity of the Debtors' business and will preserve the morale of its employees during the administration of the estate. Moreover, a potential loss (or delay in receipt) of earned wages or salaries would work a hardship on the employees.

34.     The "fundamental purpose of reorganization is to prevent the debtor from going into liquidation, with an attendant loss of jobs." *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 528 (1984). Payment of the amounts requested in this motion is in the interest of all parties because such payment will facilitate the continued operation of the Debtors' business and will help avoid the liquidation of the Debtors' assets. *See Lehigh and New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981).

35.     The authority to continue to pay the employees is necessary to ensure that the Debtors can retain employees knowledgeable about the Debtors' day-to-day operations and financial affairs, and to provide an incentive for the Debtors' employees to continue to provide quality services to the Debtors' customers.

36.     Relief similar to the relief requested in this motion has been granted in this and other courts. See, e.g., In re The Educational Resources Institute, Inc., Case No. 08-12540 (Bankr. D. Mass. 2008); In re Iron Age Corp., Case No. 07-40217 (Bankr. D. Mass. 2007); In re Tools 4 Hire, Case No. 06-14004 (Bankr. D. Mass. 2006); In re Plymouth Rubber Co., Case No. 05-16088 (Bankr. D. Mass. 2005); In re Tower Automotive, Inc., Case No. 05-10578 (Bankr.

11

S.D.N.Y. Feb. 3, 2005); <u>In re Interstate Bakeries Corp.</u>, Case No. 04-45814 (Bankr. W.D. Mo. Sept. 24, 2004). The Debtors submit that the circumstances of this case warrant similar relief.

37.  For the foregoing reasons, the Debtors believe that granting the relief requested in this motion is appropriate and in the best interests of its estate and creditors.

### NOTICE

38.  The Debtors have served this Motion by this Court's ECF System, overnight mail, facsimile or electronic mail, upon (a) all known secured creditors, (b) taxing authorities, (c) the 20 largest unsecured creditors, (d) the Office of the United States Trustee, and (e) all parties who have filed a notice of appearance in this case. In light of the relief requested herein, the Debtors submit that no other or further notice is required.

[The remainder of this page left blank intentionally.]

**WHEREFORE**, the Debtors respectfully request that this Court enter an Order, substantially in the form attached to this Motion as <u>Exhibit A</u>, (a) granting the relief requested in the motion, and (b) granting to the Debtors such other and further relief as the Court deems just and proper in the circumstances.

        Respectfully submitted,

        AUTO SALES & SERVICE, INC., GENERAL TRADING COMPANY, FRANK SAWYER CORPORATION, 100 STUART STREET LLC and SW BOSTON HOTEL VENTURE LLC

        By their proposed counsel,

        <u>/s/ Harold B. Murphy</u>
        Harold B. Murphy (BBO #362610)
        D. Ethan Jeffery (BBO #631941)
        Natalie B. Sawyer (BBO #660072)
        Christopher M. Condon (BBO #652430)
        Hanify & King P.C.
        One Beacon Street, 21st Floor
        Boston, MA  02108-3107
        Telephone:  (617) 423-0400
        Facsimile:  (617) 423-0498

Dated: May 3, 2010        hbm@hanify.com

::ODMA\PCDOCS\DOCS\561812\1