UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>AUTO SALES & SERVICE, INC.,<br><br>    Debtor. | Chapter 11<br>Case No. 10-14528-JNF |
| In re:<br><br>GENERAL TRADING COMPANY,<br><br>    Debtor. | Chapter 11<br>Case No. 10-14532-JNF |
| In re:<br><br>FRANK SAWYER CORPORATION,<br><br>    Debtor. | Chapter 11<br>Case No. 10-14533-JNF |
| In re:<br><br>100 STUART STREET LLC,<br><br>    Debtor. | Chapter 11<br>Case No. 10-14534-JNF |
| In re:<br><br>SW BOSTON HOTEL VENTURE LLC,<br><br>    Debtor. | Chapter 11<br>Case No. 10-14535-JNF<br><br>*(Joint Administration Request Pending)* |

**MOTION BY DEBTORS AND DEBTORS-IN-POSSESSION
FOR EMERGENCY DETERMINATION**

SW Boston Hotel Venture LLC ("SW Boston"), General Trading Company ("General Trading"), Frank Sawyer Corporation ("Sawyer Corporation"), 100 Stuart Street LLC ("Stuart Street") and Auto Sales & Service, Inc. ("Auto Sales" and together with SW Boston, General Trading, Sawyer Corporation and Stuart Street the "Debtors"), hereby move this Court t for entry of

an Order scheduling emergency hearings on the matters set forth below, and correspondingly shortening the required notice periods. The Debtors require emergency hearings in connection with the filing of their Chapter 11 petitions on April 28, 2010. The Debtor seeks emergency determination of the Motions (as defined below) at the Court's earliest convenience. The Motions have been contemporaneously filed. Emergency consideration of the Motions is vitally necessary to permit the Debtor to continue its operations and obtain maximum values for its assets for the benefit of its estate and its creditors. In further support of this motion, the Debtors state as follows:

### BACKGROUND

1. On April 28, 2010 (the "Petition Date"), the Debtors filed voluntary petitions under Chapter 11 of 11 U.S.C. § 101, *et seq.* ("Bankruptcy Code") with this Court.

2. The Debtors continue to operate as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code and no trustee or committee has been appointed in these cases.

**A.     The Project.**

3. The W Boston Hotel and Residences project (the "Project") opened on October 29, 2009, and comprises a 350,650 square foot, 26-story building located at 100 Stuart Street in the heart of Boston's Theatre District. The Project contains the 235–room, four-star Hotel, the 122 condominium units, and a two-level underground parking garage with capacity for 142 vehicles (the "Garage").

4. The Project was designed by the internationally-known architectural firm of William Rawn and Associates Architects, together with the architect of record TRO/Jung Brannen, Inc.

5. The Hotel is branded as a "W" Hotel – the only W Hotel in New England – and serves Boston's many national and international business travelers and tourists. The Hotel is

2

operated by Starwood Hotels and Resorts Worldwide, Inc. ("Starwood") through its affiliate, W Hotel Management, Inc. (the "Hotel Operator"). The Hotel includes a retail store operated by Wink Retail Group, Inc., an affiliate of Starwood, a signature restaurant operated by Cullinary Concepts (Boston) LLC (the "Restaurant Operator") at a prominent location along Tremont Street, and will also include a second floor spa with a first floor entrance and related retail space on the Stuart Street side of the Project (the "Spa"). The Hotel is also planned to include a below-grade theme bar/lounge with an entrance adjacent to the spa entrance on Stuart Street (the "Theme Lounge"). The Spa is in the final stages of construction and the Theme Lounge is planned to open in the fall. The Hotel Operator will operate the Spa and the Theme Lounge.

6. The Hotel restaurant, Market by Jean-Georges Vongrichten, is a 6,000 square foot, first-class, full-service restaurant that occupies the entire first floor of the Hotel along Tremont Street. Market is an important amenity for the city's visitors and theatre-goers.

7. The condominium units consist of 122 studio, one (1), two (2) or three (3) bedroom luxury condominium units. The list prices for the condominium units range from $600,000 to over $4,000,000. As of the Petition Date, SW Boston had sold twelve (12) of the condominium units and had entered into binding purchase and sale contracts for eleven (11) units.[1]

---

[1] Details regarding the pending sales are more fully described in the *Debtors' Motion For Authority to (A) Assume And Consummate Pending Purchase And Sale Agreements For Condominium Units; (B) Make And Consummate New Sales For Condominium Units; And (C) For Related Relief*, which has been filed contemporaneously with this motion.

B. **The Debtors.**

8. SW Boston is a Delaware limited liability company formed by a local family, descendants of the late taxicab/parking businessman Frank Sawyer, to develop and own the Project.

9. Stuart Street is a Delaware limited liability company that owns 100% of the membership interests in SW Boston. Stuart Street is a single purpose entity formed to own the membership interests in SW Boston.

10. Sawyer Corporation is a Massachusetts corporation that owns approximately sixty-five percent (65%) of Stuart Street. Sawyer Corporation manages Stuart Street.

11. General Trading is a Massachusetts corporation all of whose stock is owned by the Trust. General Trading does business as Sawyer Enterprises, and provides administrative services for the Debtors as well as various non-debtor affiliates of the Debtors. The Chief Executive Officer of General Trading is Carol Sawyer Parks, and the Vice President in charge of overseeing the development and operation of the Project is John P. Connolly.

12. Auto Sales is a Massachusetts corporation.

C. **Management of The Hotel And Parking Garage.**

13. The Hotel is managed and operated by the Hotel Operator pursuant to a management contract with SW Boston dated August 23, 2005, as amended (the "Hotel Contract"). Pursuant to the Hotel Contract, the Spa and the Theme Lounge will also be managed and operated by Starwood.

14. Starwood is one of the nation's premier hotel operators. Starwood operates the Westin, St. Regis, and Le Meridian families of hotels, as well as hotel properties operating under the Sheraton and Sherwood banners and 28 first-class hotels carrying the "W" brand. Boston has

4

one of the largest concentrations of Starwood-affiliated hotels in the country, including the Westin Copley Square hotel, Westin Convention Center hotel, and Sheraton hotels, as well as numerous hotels outside of Boston proper.

15. Under the Hotel Contract, the Hotel's revenue (the "Hotel Revenue") is maintained in operating accounts in the name of SW Boston from which the expenses of operating the Hotel, including Starwood's management fee, are paid by Starwood. The employees of the Hotel are employees of Starwood. Starwood disburses to SW Boston the Hotel revenue remaining after the payment of the operating expenses of the Hotel. Pursuant to the Hotel Contract, SW Boston and the Hotel Operator agreed to an annual operating plan prior to the Petition Date, and the Hotel is operating in accordance with that plan.

16. The Garage is managed and operated by Ultimate Parking, LLC ("Ultimate") pursuant to a contract with SW Boston dated September 30, 2009, as amended (the "Garage Contract").

17. Under the Garage Contract, the Garage's revenue (the "Garage Revenue") is maintained in an operating account in the name of SW Boston from which the expenses of operating the Garage, including Ultimate's management fee, are paid by Ultimate. The employees of the Garage are employees of Ultimate. Ultimate disburses to SW Boston the Garage revenue remaining after the payment of the operating expenses of the Garage. Pursuant to the Garage Contract, SW Boston and Ultimate agreed to an annual operating plan prior to the Petition Date, and the Garage is operating in accordance with that plan.

### D. Events Precipitating The Bankruptcy Filings.

18. The Hotel (including the restaurant) and the Garage opened on October 29, 2009, and have operated at or better than projected. Construction of a portion of the condominium units was completed and closings on those floors commenced immediately. Construction of the remaining floors of the condominium units was completed in January 2010. Sales of the condominium units, however, have been slower than initially projected at the time of the closing of the senior loan on the Project (January 2008) due largely to the nearly unprecedented global economic crisis, the near-collapse of the national capital markets, and the accompanying softening of the residential real estate market.

19. Prior to the Petition Date, SW Boston had extensive discussions with The Prudential Insurance Company of America, on behalf of and solely for the benefit of, and with its liability limited to the assets of, its insurance company separate account, PRISA ("Prudential") the senior lender on the construction loan for the Project (the "Senior Loan") regarding the restructuring of the Senior Loan to reflect the dramatic downturn in the global economy, the near collapse of the national and international capital markets for commercial real estate and the dramatic downturn in the local real estate market. Prudential declined to restructure its loan on terms acceptable to the Debtor, thereby exposing the Debtors' bank accounts and assets to seizure, forcing the Debtors to file these bankruptcy proceedings in order to preserve the value of their assets and their opportunity to reorganize and restructure the Senior Loan.

### RELIEF REQUESTED

20. Pursuant to MLBR 9013-1(h), the Debtors request that the Court conduct hearings on the following motions (the "Motions") at the Court's earliest convenience:

    a. *Motion for Entry of an Order (I) Authorizing The Use of Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling a Hearing on The Further*

*Use of Cash Collateral, And (IV) Granting Other Relief* (the "Cash Collateral Motion");

b.  *Debtors' Motion for Authority (A) to Assume and Consummate Pending Purchase and Sale Agreements for Condominium Units; (B) Make and Consummate New Sales for Condominium Unites; and (C) for Related Relief* (the "Condominium Sale Motion");

c.  *Motion by The Debtors and Debtors-in-Possession For Order Authorizing Maintenance of Certain of the Debtor's Existing Bank Accounts And Business Forms, and Related Relief* (the "Bank Account Motion");

d.  *Motion by Debtors and Debtors-in-Possession to (A) Pay Prepetition Wages, Salaries, and Benefits; and (B) Use Existing Payroll Accounts and Business Forms* (the "Wage Motion");

e.  *Motion by Debtors and Debtors-in-Possession for Impoundment of Certain Wage and Salary Information in connection with Motion to (A) Pay Prepetition Wages, Salaries, and Benefits; and (B) Use Existing Payroll Accounts and Business Forms* (the "Impoundment Motion"); and

f.  *Motion by Debtors and Debtors-in-Possession For Entry of an Order Directing Joint Administration of Chapter 11 Cases* (the "Joint Administration Motion").

21.  Immediate determination of the Cash Collateral Motion is necessary to prevent any interruption in the Debtors' business and the services to the Hotel's guests and the residents of the condominiums. The use of Cash Collateral will provide stability to the Debtor's operations, thereby preserving the value of the Debtors' assets and preventing economic harm to their respective bankruptcy estates and creditors.

22.  By the Bank Account Motion, the Debtors seek authority to maintain one primary payroll bank account and that the bank accounts established under the Hotel Contract and the Garage Contract be maintained. Emergency determination of that motion is necessary because without that relief, the operation of the Hotel and the Garage will be interrupted in violation of those contracts and to the detriment of the customers of the Hotel and the Garage.

23. Emergency determination of the Condominium Sale Motion is necessary to allow the Debtors to proceed with pending sales of the Condominiums and enter into new sales agreements with new purchasers. Absent the relief sought by the motion sales of the Condominiums may be lost and the Debtors' estates irreparable harmed.

24. Emergency determination of the Wage Motion is warranted because of its impact on employee morale. Moreover, the Debtors' business operations may be unnecessarily interrupted if payment of their employees is not authorized or not honored.

25. The relief requested in the Impoundment Motion is directly related to the relief requested in the Wage Motion.

26. Emergency determination of the Joint Administration Motion is appropriate because joint administration will allow the Debtors to consolidate filings and efforts resulting in a significant reduction in administrative efforts and costs.

27. Each of the Motions seeks to allow the Debtors to continue in their operations, limit administrative costs of these proceedings and prevent unnecessary diminution of the Debtors' estates.

28. The Debtors request that this Court approve the following notice of the Motions and notice of the hearings:

    a. The Debtors shall serve copies of the Motions by fax and/or electronic mail to: (a) all known secured creditors, (b) taxing authorities, (c) the 20 largest unsecured creditors of each Debtor, (d) the Office of the United States Trustee, and (e) all parties who have filed a notice of appearance in this case (collectively the "Notice Parties");

    b. The Debtors shall serve copies of the Condominium Sale Motion upon counterparties to any Condominium purchase and sale agreements and/or their counsel;

    c. The Debtors shall provide notice of any emergency hearing by telephone and/or facsimile to the Notice Parties and, where applicable, counterparties to any Condominium purchase and sale agreements.

29.  Based on the foregoing, the Debtors submit that the requested relief is necessary and appropriate, and is in the best interests of its estate and creditors.

**NOTICE**

30.  The Debtors have served this motion and the Motions by this Court's ECF System, facsimile or electronic mail, upon (a) all known secured creditors, (b) taxing authorities, (c) the 20 largest unsecured creditors, (d) the Office of the United States Trustee, and (e) all parties who have filed a notice of appearance in this case. In light of the relief requested herein, the Debtors submit that no other or further notice is required.

**WHEREFORE**, the Debtors respectfully request that this Court enter an order, in substantially the form attached as Exhibit A, granting this Motion, scheduling the requested hearings at the Court's earliest convenience, approving the notice set forth above and granting such other and further relief as is just and proper.

Respectfully submitted,

AUTO SALES & SERVICE, INC., GENERAL TRADING COMPANY, FRANK SAWYER CORPORATION, 100 STUART STREET LLC and SW BOSTON HOTEL VENTURE LLC

By their proposed counsel,

/s/ Harold B. Murphy
Harold B. Murphy (BBO #362610)
D. Ethan Jeffery (BBO #631941)
Natalie B. Sawyer (BBO #660072)
Christopher M. Condon (BBO #652430)
Hanify & King P.C.
One Beacon Street, 21st Floor
Boston, MA 02108-3107
Telephone: (617) 423-0400
Facsimile: (617) 423-0498
hbm@hanify.com

Dated: May 3, 2010
::ODMA\PCDOCS\DOCS\562057\1