UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(Eastern Division)

| | |
|---|---|
| In re: | Chapter 11 |
| SW BOSTON HOTEL VENTURE, LLC, *et al.*,[1] | Case No. 10-14535-JNF |
| Debtors. | (Jointly Administered) |

**SECOND MOTION BY DEBTORS PURSUANT TO 11 U.S.C. §§ 1121(d)
AND 362(d)(3) TO EXTEND THE DEADLINES TO FILE A PLAN
OF REORGANIZATION AND SOLICIT ACCEPTANCES OF PLAN**

SW Boston Hotel Venture, LLC ("SW Boston"), Auto Sales & Service, Inc. ("Auto Sales"), General Trading Company ("General Trading"), Frank Sawyer Corporation ("Sawyer Corporation"), 100 Stuart Street, LLC ("Stuart Street"), General Land Corporation ("General Land"), 131 Arlington Street Trust ("Arlington Street") and 30-32 Oliver Street Corporation ("Oliver Street") (collectively the "Debtors"), the debtors and debtors-in-possession in the above-captioned, jointly administered Chapter 11 cases, move the Court for the entry of an order: (a) extending the period during which the Debtors have the exclusive right to file a plan through and including March 31, 2011, and (b) extending the period during which the Debtors have the exclusive right to solicit acceptances of their plan through and including May 31, 2011. The Debtors also request that, to the extent that Section 362(d)(3) of the Bankruptcy Code is applicable to any of them, the deadlines contained in Section 362(d)(3) likewise be extended through and including March 31, 2011.

---

[1] The other Debtors in the jointly administered cases are Auto Sales & Service, Inc. (Case No. 10-14528-JNF), General Trading Company (Case No. 10-14532-JNF), Frank Sawyer Corporation (Case No. 10-14533-JNF), 100 Stuart Street, LLC (Case No. 10-14534-JNF), 30-32 Oliver Street Corporation (Case No. 10-16173-JNF), General Land Corporation (Case No. 10-16174-JNF), and 131 Arlington Street Trust (Case No. 10-16177-JNF).

In support of this motion, the Debtors aver as follows:

## JURISDICTION

1. This Court has jurisdiction to consider and determine this motion pursuant to 28 U.S.C. § 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

2. On April 28, 2010 (the "Petition Date"), SW Boston, General Trading, Sawyer Corporation, Stuart Street and Auto Sales filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Massachusetts (the "Court").

3. On June 4, 2010, General Land, Oliver Street and Arlington Street filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the Court.

4. The Debtors' cases are being jointly administered. The Debtors continue to operate as debtors and debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

5. On May 13, 2010, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee"). No trustee or examiner has been appointed in the Debtors' cases.

**A.    The Debtors.[1]**

   **i.    SW Boston.**

6. The centerpiece of these cases is the W Boston Hotel and Residences (the "W Hotel and Residences"), a 350,650 square foot, 235 room, four-star hotel with 123 luxury

---

[1] The description of the claims and liens against the Debtors in this motion is without prejudice to the Debtors' right to challenge any claims and/or liens on any grounds.

condominiums located above the hotel. The operations at the W Hotel and Residences, located at 100 Stuart Street in the heart of Boston's Theatre District, consist, or will consist, of the "W" Hotel (the "Hotel"), the "W" Residences (the "Condominiums"), a parking garage (the "Garage"), a restaurant and lobby bar (collectively the "Restaurant"), a retail store (the "Store"), a spa (the "Spa"), and a theme bar (the "Theme Bar").

7. The Hotel, the Store and the Spa are managed by affiliates of Starwood Hotels and Resorts Worldwide, Inc. (collectively with those affiliates "Starwood"). The 142 space Garage, which provides parking for both the Hotel and the Condominiums, is managed by Ultimate Parking, LLC (the "Garage Manager"). The Restaurant, "Market by Jean-Georges Vongrichten," is a 6,000 square foot, first-class, full-service restaurant that is managed by Culinary Concepts (Boston), LLC ("CCJG"). The Theme Bar, when completed, will be managed by Starwood.

8. SW Boston was capitalized with land, which had an approximate value of $18 million, and approximately $25 million in cash. SW Boston constructed and now owns and operates the W Hotel and Residences. FTI Consulting, Inc. ("FTI"), the Debtors' appraiser, has valued the W Hotel and Residences at $156,000,000 as of August 1, 2010. This value does not take into account the enhancement in value resulting from the post-petition completion of the Spa and the work on the Theme Bar and various punch-list items. As of the Petition Date, SW Boston had cash and securities of approximately $7,075,000,[2] including $4,000,000 pledged to the City, and accounts receivable related to the Hotel operations of approximately $487,000.

9. The construction financing for the W Hotel and Residences was provided by Prudential (the "Prudential Loan"). At the present time, SW Boston owes Prudential

---

[2] SW Boston has a potential avoidance action with respect to Prudential's lien on the funds in certain of its bank accounts.

approximately $154,400,000 on account of the Prudential Loan.[3]

10. As collateral for the Prudential Loan, SW Boston granted Prudential a mortgage on the W Hotel and Residences and liens on certain of its cash, securities and other personal property.

11. On December 9, 2009, the City loaned $10.5 million to SW Boston to finance the construction of the Restaurant, the Spa and the Theme Bar (the "City Loan"). As of the Petition Date, the outstanding balance of the City Loan was approximately $10.5 million and there were undisbursed loan proceeds of approximately $2.6 million. As collateral for the City Loan, SW Boston granted the City a second mortgage on the W Hotel and Residences and pledged $4,000,000 in cash to the City.[4]

12. The Debtors believe that the allowed non-insider unsecured claims against them aggregate between $3.0 and $4.0 million. The largest claim of the Debtors' affiliates is held by SE Berkeley and SE McClellan, arising from the draw on the Letter of Credit.

**ii.    Stuart Street**

13. Stuart Street is a single purpose entity and whose sole asset is its membership interests in SW Boston. Prior to the Petition Date, Stuart Street pledged its membership interests in SW Boston to secure the Prudential Loan.

**iii.    Sawyer Corporation**

14. Sawyer Corporation owns approximately sixty-five percent (65%) of the membership interests in Stuart Street and manages Stuart Street. As of the Petition Date,

---

[3] As of the Petition Date, Prudential was owed approximately $180 million. Following the Petition Date, Prudential made a draw on a $17.3 million letter of credit (the "Letter of Credit") that had been obtained by SE Berkeley Street, LLC ("SE Berkeley") and SE McClellan Highway, LLC ("SE McClellan"), non-debtor affiliates of the Debtors, for the benefit of Prudential.

[4] SE Berkeley and SE McClellan provided additional credit support for the City Loan by granting second mortgages on their respective real property.

Sawyer Corporation's other assets included cash and marketable securities with a value of approximately $6.9 million. Prior to the Petition Date, Sawyer Corporation pledged its membership interests in Stuart Street as well as its marketable securities to secure the Prudential Loan.

### iv. General Trading

15. General Trading does business as Sawyer Enterprises, and provides administrative services for the Debtors' businesses as well as the businesses of various non-debtor affiliates of the Debtors. As of the Petition Date, General Trading's assets included cash and marketable securities with an aggregate value of approximately $1.4 million. Prior to the Petition Date, General Trading pledged its cash and marketable securities to secure the Prudential Loan.

### v. Auto Sales

16. As of the Petition Date, Auto Sales' assets included cash and marketable securities with an aggregate value of approximately $224,000. Prior to the Petition Date, Auto Sales pledged its cash and marketable securities to secure the Prudential Loan.

### vi. Oliver Street

17. Oliver Street owns a seven (7) unit residential building located at 25-27 Pinckney Street, Boston, Massachusetts (the "Pinckney Property"). The Pinckney Property had an appraised value as of August, 2009, of approximately $1,980,000. Prior to the Petition Date, Oliver Street granted Prudential a first mortgage on the Pinckney Property to secure the Prudential Loan and granted the City a second mortgage on the Pinckney Property to secure the City Loan.

### vii. General Land

18. General Land owns and manages three (3) parking lots in Boston, Massachusetts, located at (a) 109 & 121-127 Arlington Street (the "Arlington Lot"), (b) India Wharf and Wells Street, and (c) 38 Isabella Street. General Land also manages a fourth parking lot owned by a non-debtor affiliate. The parking lot located at 109 & 121-127 Arlington Street had an appraised value as of August 2009, of approximately $2,800,000. General Land's parking lots located at India Wharf and Wells Street and 38 Isabella Street have assessed values, for real estate tax purposes of $554,000 and $1,179,000, respectively. General Land owns 100% of the shares of 200 Newbury Street Corporation ("Newbury"), the owner of the retail and commercial building located at 200 Newbury Street, Boston, Massachusetts.[5] As of the Petition Date, General Land's other assets included accounts receivable in the aggregate amount of approximately $42,000.

19. Prior to the Petition Date, General Land granted Prudential a first mortgage on the Arlington Lot to secure the Prudential Loan and granted the City a second mortgage on the Arlington Lot to secure the City Loan. General Land's other parking lots are unencumbered.

### viii. Arlington Street

20. Arlington Street owns a commercial building used for storage and other purposes located at 131 Arlington Street, Boston, Massachusetts (the "Arlington Property"). The Arlington Property had an appraised value as of August, 2009, of approximately $2,100,000. Prior to the Petition Date, Arlington Street granted Prudential a first mortgage on the Arlington Property to secure the Prudential Loan and granted the City a second mortgage on the Arlington Property to secure the City Loan.

---

[5] Newbury's real property is subject to a mortgage in favor of the Guardian Life Insurance Company of America ("Guardian").

**B.    Events Precipitating The Bankruptcy Filings.**

21.    The W Hotel and Residences opened for business on October 29, 2009. Since that time the Hotel has operated at or better than projected. The recent crisis in the global economy and the national capital markets and the accompanying turmoil in the residential real estate market slowed down the sales of the Condominiums.

22.    Although SW Boston engaged in discussions with Prudential regarding the restructuring of the Prudential Loan, SW Boston was unable to reach an agreement with Prudential and were forced to file Chapter 11 petitions in order to preserve their assets and their opportunity to reorganize. Oliver Street, General Land and Arlington Street subsequently filed bankruptcy in order to accomplish a comprehensive restructuring among the Debtors.

**C.    Adequate Protection.**

23.    As a condition to making the Prudential Loan and the City Loan, Prudential and the City, respectively, required that the Debtors provide them with collateral to secure the loans. The collateral package provided by the Debtors consisted of the following:[6]

| Debtor | Property | Value |
|---|---|---|
| SW Boston Hotel Venture, LLC | | |
| Hotel | W Boston Hotel and Parking | $65,600,000 |
| Condominiums | W Boston Residences | $90,600,000 |
| Prudential only | Cash (Sovereign Accounts) | $ 1,494,000 |
| Prudential only | Cash (Hotel/Parking Accounts) | $ 2,092,000 |
| City only | Cash (Boston Private Bank) | $ 4,000,000 |
| | | |
| 131 Arlington Street Trust | 131 Arlington St., Boston | $ 1,850,000 |

---

[6] The real property values listed are based on appraisals conducted by FTI. The cash balances consist of bank balances as of the following dates: (a) Sovereign Accounts – September 30, 2010, (b) Hotel/Parking Accounts – October 30, 2010, (c) Boston Private Bank – April 28, 2010. The values for securities are as of November 5, 2010. This chart does not include mortgages granted by SE Berkeley and SE McClellan, two non-debtors, to the City.

7

| | | |
|---|---|---|
| General Land Corporation | 109 & 121-127 Arlington St., Boston | $ 2,400,000 |
| 30-32 Oliver Street Corporation | | |
| | 25 Pinckney St., Boston | $ 1,160,000 |
| | 27 Pinckney St., Boston | $ 1,020,000 |
| Auto Sales & Service, Inc. | Securities | $   212,359 |
| General Trading Corporation | Securities | $ 1,290,165 |
| Frank Sawyer Corporation | Securities | $ 6,821,494 |

24.     Between the Petition Date and October 31, 2010, the Debtors have generated positive net cash flow of approximately $900,000, resulting in an increase in cash collateral of that amount. Between the Petition Date and November 3, 2010, SW Boston has closed a total of twelve (12) Condominium sales, from which Prudential has been paid a total of approximately $9,153,000 for application to its claim. As of November 3, 2010, SW Boston has four (4) executed and pending purchase and sale agreements for the sale of four (4) Condominiums that are scheduled to generate a total of approximately $2,519,900 in net proceeds, before closing costs, and four (4) executed reservations for the sale of five (5) Condominiums that will generate a total of approximately $6,416,800 in net proceeds before closing costs. As of November 3, 2010, SW Boston has entered into seven (7) leases of and/or use and occupancy agreements for Condominiums that will generate gross rental proceeds of approximately $27,150 per month.

25.     The value of the W Hotel and Residences has also been enhanced by the post-petition completion of construction on various aspects of the W Hotel and Residences project. SW Boston has substantially completed the Hotel and Condominium punch list items that were outstanding on the Petition Date. The Spa was completed using the undisbursed proceeds of the

8

City Loan, at no cost to Prudential, and opened on August 18, 2010. The construction of the Theme Bar was interrupted twice by conditions beyond SW Boston's control, first by a change in the building code caused the Theme Bar to be out of compliance with the new building code and, second, after SW Boston received a building code variance from the City, by a *sua sponte* appeal of that variance by the Commonwealth of Massachusetts Building Code Appeals Board (the "State Board"). SW Boston appeared before the State Board in on August 21, 2010, and the State Board subsequently approved the Theme Bar variance. SW Boston is awaiting the issuance of the State Board's written decision and the necessary permits to continue completion of the Theme Bar. The completion of the Theme Bar will be funded from the City Loan, again at no cost to Prudential. The Hotel operations continue to exceed projections and to outperform its competition.

**C.    The Current Exclusivity And § 362(d)(3) Deadlines**

26.    On August 24, 2010, the Court entered an order (the "First Extension Order")[docket no. 258]: (a) extending the period during which the Debtors have the exclusive right to file a plan to November 26, 2010, and (b) extending the period within which the Debtors may solicit acceptances of a plan to January 25, 2011 (collectively referred to as the "Exclusivity Deadlines").

27.    For any of the Debtors' cases that is determined by the Court to be a single asset real estate case under section 101(51B) of the Bankruptcy Code, the First Extension Order established November 26, 2010, as the deadline to file a plan of reorganization or commence making interest payments to their secured creditors pursuant to Section 362(d)(3) of the Bankruptcy Code (the "362(d)(3) Deadline").

9

## BASIS FOR RELIEF

28. Pursuant to section 1121(d) of the Bankruptcy Code, the Debtors request the entry of an Order: (a) extending the period during which the Debtors have the exclusive right to file a plan through and including March 31, 2011, and (b) extending the period during which the Debtors have the exclusive right to solicit acceptances of their plan through and including May 31, 2011. The Debtors also request that, to the extent that Section 362(d)(3) of the Bankruptcy Code is applicable to any of them, the deadlines contained in Section 362(d)(3) likewise be extended through and including March 31, 2011. The extension of the Exclusivity Deadlines requested in this motion does not exceed the limitations set forth in sections 1121(d)(2)(A) and (B) of the Bankruptcy Code.

29. Section 1121(d) provides that a Court may extend a debtor's exclusive periods for "cause." *See* 11 U.S.C. § 1121(d)(1). In determining whether cause exists to extend the exclusive periods, courts apply a variety of factors to assess the totality of circumstances in each case. *See In re Adelphia Communication Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006) (decision to extend or terminate exclusivity for cause is within the discretion of the bankruptcy court and is fact specific); *In re Dow Corning Corp.*, 208 B.R. 661, 664, 670 (Bankr. E.D. Mich. 1997); *In re McLean Industries, Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987). Those factors include, without limitation:

  (a) The size and complexity of the case;

  (b) The existence of good-faith progress towards reorganization;

  (c) A finding that the debtor is not seeking to extend exclusivity to pressure creditors "to submit to the debtor's reorganization demands;" and

  (d) The fact that the debtor is paying its bills as they come due.

*See Adelphia*, 352 B.R. at 587; *McLean Indus.*, 87 B.R. at 834.

30. The Court has "a high degree of flexibility" in evaluating the factors for each case and "is not required to apply any particular set of factors, or number of factors, in every case." *In re The Elder-Beerman Stores Corp.*, 1997 WL 1774880, *4 (S.D. Ohio 1997).

31. The Bankruptcy Code requires that debtors whose cases are determined to be SARE cases must, within 90 days of the order for relief or within 30 days after its case is determined to be a SARE case, file a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time or commence making interest only payments to their secured creditors. *See* 11 U.S.C. § 362(d)(3). The 362(d)(3) Deadline, similar to the Exclusivity Deadlines, may also be extended for "cause." *See In re Heather Apartments Limited Partnership*, 366 B.R. 45 (Bankr. D. Minn. 2007).

32. Based upon the factors set forth above, more than sufficient cause exists to extend the Exclusivity Deadlines and the 362(d)(3) Deadline.

**A.    The Size and Complexity of the Debtors' Cases Provides Cause for the Requested Extensions.**

33. The size and complexity of the Debtors' cases alone provide cause to extend the exclusivity and Section 362(d)(3) periods. *See Express One International, Inc.*, 194 B.R. at 100 ("The traditional ground for cause is the large size of the debtor and the concomitant difficulty in formulating a plan of reorganization.") (citations omitted). A case need not be "a Texaco, Johns-Manville Forest Products, or Ames Department Stores to be considered 'large and complex' within the meaning of section 1121." *Express One*, 194 B.R. at 100.

34. These cases involve eight (8) debtors that have multiple businesses and extensive assets. Non-insider claims against the Debtors aggregate approximately $170,000,000. It is likely that Prudential will oppose confirmation of a plan of reorganization proposed by the Debtors.

11

35. The W Hotel and Residences is a major real estate development, involving an initial capital investment and collateral pledged of approximately $75 million and financing of over $190 million. Seven (7) debtor affiliates and two (2) non-debtor affiliates of SW Boston provided substantial the additional credit support by pledging collateral and the Letter of Credit to secure the loans from Prudential and the City.

36. The Debtors' two primary secured creditors, Prudential and the City have liens on some of the same collateral, but each also hold liens on some collateral that the other does not. A successful reorganization requires the restructuring of all eight (8) of the Debtors and their debts simultaneously.

37. The W Hotel and Residences is in its infancy and its operations and revenue sources have not fully developed.

38. The size and complexity of the Debtors' cases alone provide sufficient cause to grant the requested extensions of the Exclusivity Deadlines and the 362(d)(3) Deadline. *See McLean Indus.*, 87 B.R. at 831-32 (jointly-administered debtors' cases were sufficiently complex to warrant extension of exclusivity where debtor affiliates had guaranteed $93 million obligation of other debtor affiliate and had pledged securities and granted mortgages to senior secured lender).

**B.    The Debtors Have Made Substantial Progress Toward Reorganization.**

39. Since the Petition Date, the Debtors have made substantial progress towards the completion of the whole W Hotel and Residences project, completing the Spa and continuing to work on the punch list items and the Theme Bar.

40. The Debtors have received and are continuing to evaluate expressions of interest regarding investment in the W Hotel and Residences. The Debtors are working with these

12

potential providers of equity or debt to provide the information they require to make a decision on participating in a plan of reorganization.

41. The Debtors and their financial advisor, Argus Management ("Argus") have developed a financial model (the "Argus Presentation") that forecasts the cash flow that will be generated from the sellout of the Condominiums and the continued Hotel operations and is based on the cash flow projections in the appraisals performed by FTI. The cash flow projections in the FTI appraisals are substantially similar to the cash flow projections developed and utilized by Prudential's real estate appraisers, Cushman & Wakefield, in their appraisals.

42. The Argus Presentation demonstrates that an orderly sellout of the Condominiums and the restructuring of the Prudential indebtedness with a reasonable rate of interest will result in the reduction of Prudential's claim to a level that can be comfortably serviced from the Hotel operations, and that there will be sufficient revenue to pay all other non-insider claims in full. The Argus Presentation is merely one potential plan scenario that the Debtors are considering while they continue to operate the Hotel, complete the W Hotel and Residences project and sell and lease Condominiums in the ordinary course of business.

43. The Argus Presentation demonstrates the viability of the Debtors' restructuring. Since the Debtor's restructuring is viable, providing the Debtors with additional time to refine their business operations and the legal and financial framework of a plan of reorganization will insure that the strongest possible plan of reorganization is presented. This is in the best interest of all creditors.

44. Attached as <u>Exhibit A</u> are projections (the "Projections") showing the Debtors' projected financial operations through June 30, 2011 along with the Debtors' cumulative actual financial performance since the Petition Date. The Projections show that the Debtors will

generate positive cash flow, notwithstanding the additional costs associated with their bankruptcy cases, of approximately $725,000 through June 30, 2011. The Debtors' financial performance will, therefore, support the requested extension of the Exclusivity Deadlines and the 362(d)(3) Deadline through March 31, 2011 and through the confirmation of a plan filed within those extended deadlines.

45. Among the items that the Debtors are working to finalize in conjunction with the formulation of their plan are: (a) complete the leasing program, which currently generates approximately $27,150 per month but is projected to generate approximately $100,000 per month when complete; (b) complete the Theme Bar, which will provide another substantial revenue source; (c) refine the Restaurant's operations – discussions with CCJG to do so are currently underway – to generate more revenue for SW Boston; (d) complete the close out of SW Boston's construction contract with Bovis Lend-Lease LMB, Inc., the general contractor for the construction of the W Hotel and Residences, and (e) develop, in light of the changing real estate market, an appropriate sellout and pricing schedule for the Condominiums that will form one of the primary bases of a plan of reorganization.

46. The Debtors have been in bankruptcy for just over six months. For the last two of those six months, the Debtors and their advisors have been forced to devote a substantial amount of time to responding to and preparing for the hearing on the *Motion of Prudential Insurance Company of America for Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362(d)* [docket no. 201] (the "Motion for Relief"). In response to document requests from Prudential, the Debtors reviewed, processed and produced over 32,000 documents. Thirteen depositions were taken. The Debtors are not large organizations, and Motion for Relief has

forced the Debtors and their professionals to divert a substantial amount of time and resources away from their other duties and their financial restructuring.

47. The Debtors' substantial progress toward reorganization warrants the requested extension of the Exclusivity Deadlines and the § 362(d)(3) Deadline.

## C. The Debtors Are Not Seeking to Pressure Creditors into Accepting a Plan They Find Unacceptable.

48. The Debtors are not seeking to extend the Exclusivity Deadlines in order to pressure creditors "to submit to the debtor's reorganization demands." *Adelphia*, 352 B.R. at 587. The Debtors have not asked that creditors discount their claims as they intend to propose a plan to pay all creditors in full.

49. Since the Petition Date, the Debtors have worked cooperatively with their major creditor constituencies, including Prudential, the City, the Committee and Bovis. The Debtors have maintained open communication with and have supplied regular reports to all major creditor constituencies, and have promptly responded to any requests for information. All of the major creditor constituencies are represented by able counsel.

50. The requested extensions of the Exclusivity Deadlines and the 362(d)(3) Deadline are not an attempt to leverage the bankruptcy process to force creditors to accept less than they are entitled to receive under the Bankruptcy Code.

51. Since the requested extensions are not being made to pressure creditors into accepting a plan they find unacceptable, the extension of the Exclusivity Deadlines and the 362(d)(3) Deadline is warranted.

## D. Creditors Will Not Be Prejudiced by the Requested Extensions.

52. Creditors will not be prejudiced in the event the Court grants the requested extensions of the Exclusivity Deadlines and the 362(d)(3) Deadline.

53.     As is described above, Prudential's and the City's interests are adequately protected by a substantial collateral package. The interests of all creditors are being protected and enhanced by SW Boston's continuing work on the completion of the whole W Hotel and Residences project and by the continued sale and lease of the Condominiums.

54.     The value of the Debtors' assets is not declining. The Debtors' post-petition obligations, including real estate taxes and condominium association fees related to the unsold Condominiums, are being paid timely. The Debtors operations are generating positive cash flow and are enhancing the value of the W Hotel and Residences. *See In re Gibson & Cushman Dredging Corp.*, 101 B.R. 405, 410 (E.D.N.Y. 1989) (extension of exclusivity appropriate where debtors able to maintain operations during chapter 11 case and "the debtor's assets were not only being preserved, but augmented"). SW Boston continues to sell condominium units and to pay the net proceeds to Prudential. SW Boston will continue to do so during the extended exclusivity period.

55.     In the event of a forced liquidation of the Debtors' assets, a meaningful recovery for unsecured creditors is unlikely. Far from being prejudiced by the requested extensions of the Exclusivity Deadlines and the 362(d)(3) Deadline, the Debtors unsecured creditors will benefit from providing the Debtors the time necessary to formulate a plan of reorganization.

## CONCLUSION

56.     For the foregoing reasons, cause therefore exists to extend the Exclusivity Deadlines and the 362(d)(3) Deadline as requested in this motion..

## NOTICE

57.     The Debtors will serve this motion on (a) all of their secured creditors, (b) any taxing authority that has asserted a claim against the Debtors' bankruptcy estates, (c) counsel to

16

the Committee, (d) the Office of the United States Trustee, and (e) all parties who have filed a notice of appearance in these cases. Service in this manner provides sufficient notice in light of the nature of the relief requested.

**WHEREFORE**, the Debtors respectfully request that the Court enter an order, substantially in the form attached as Exhibit B:

(i)   Extending the period during which the Debtors have the exclusive right to file a plan through and including March 31, 2011;

(ii)  Extending the period during which the Debtors have the exclusive right to solicit acceptances thereof through and including May 31, 2011;

(iii) To the extent applicable, extending the deadline for the Debtors to file a plan under 11 U.S.C. § 362(d)(3) through and including March 31, 2011; and

(iv)  Granting to the Debtors such other relief as this Court deems proper.

Respectfully Submitted,

SW BOSTON HOTEL VENTURE LLC, *et al.*,

By their counsel,

/s/ D. Ethan Jeffery
Harold B. Murphy (BBO #362610)
D. Ethan Jeffery (BBO #631941)
HANIFY & KING, P.C.
One Beacon Street
Boston, MA  02108-3107
Tel: (617) 423-0400
Fax: (617) 556-8985
Email: dej@hanify.com

Dated:  November 10, 2010
579254