UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(Eastern Division)

| | |
|---|---|
| In re:<br><br>SW BOSTON HOTEL VENTURE, LLC[1], *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 10-14535-JNF<br><br>(Jointly Administered) |

**MOTION BY DEBTOR FOR APPROVAL OF (A) SALE PROCEDURES,
(B) BREAK-UP FEE AND EXPENSE REIMBURSEMENT PROVISIONS AND (C) (1)
PROCEDURES FOR ASSUMPTION AND ASSIGNMENT OF EXECUTORY
CONTRACTS AND UNEXPIRED LEASES AND (2) FORM OF NOTICE OF
CONTRACT ASSUMPTION AND ASSIGNMENT AND CURE AMOUNTS
IN CONNECTION WITH SALE OF THE DEBTOR'S COMMERCIAL UNIT,
PARKING GARAGE UNIT AND RELATED ASSETS
<u>FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES</u>
(Expedited Treatment Requested)**

SW Boston Hotel Venture, LLC ("SW Boston" or the "Debtor"), the debtor and debtor-in-possession in the above captioned action, hereby requests approval of (A) sale procedures (the "Sale Procedures"), (B) break-up fee (the "Break-up Fee") and expense reimbursement ("Expense Reimbursement") provisions and (C) (1) procedures for assumption and assignment of executory contracts and unexpired leases and (2) form of notice of contract assumption and assignment and cure amounts in conjunction with the *Debtor's Motion for Order (I) Authorizing the Sale of the Debtor's Commercial Unit, Parking Garage Unit and Related Assets Free and Clear of All Liens, Claims, Interests and Encumbrances, (II) Authorizing the Assumption and*

---

[1] The other debtors in the jointly administered cases besides SW Boston are Auto Sales & Service, Inc. (Case No. 10-14528-JNF), General Trading Company (Case No. 10-14532-JNF), Frank Sawyer Corporation (Case No. 10-14533-JNF), 100 Stuart Street, LLC (Case No. 10-14534-JNF), 30-32 Oliver Street Corporation (Case No. 10-16173-JNF), General Land Corporation (Case No. 10-16174-JNF) and 131 Arlington Street Trust (Case No. 10-16177-JNF) (these debtors, not including SW Boston, the "Affiliated Debtors").

#592433

*Assignment of Certain Executory Contracts and Unexpired Leases in Conjunction Therewith and (III) for Related Relief* (the "Sale Motion"). The Sale Motion seeks approval of a purchase and sale agreement (the "Hotel PSA") that contemplates the sale of certain of the Debtor's assets (collectively the "Property") related to its hotel and garage operations, by private sale free and clear of all liens, claims, interests and other encumbrances, as a going concern to Razorbacks Owner LLC ("Purchaser").[2]

The Debtor respectfully requests that the Court schedule a hearing on this sale procedures motion (the "Sale Procedures Motion")[3] at the earliest opportunity this week (the week of March 28) because the Purchaser may terminate the Hotel PSA if this Sale Procedures Motion has not been approved by April 12, 2011. In further support, the Debtor states as follows:

## JURISDICTION

1.      This Court has jurisdiction to consider and determine this motion pursuant to 28 U.S.C. § 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief requested in this motion include Sections 105(a), 361, 362, 363 and 365 of the Bankruptcy Code, Rules 6004 and 6006 of the Federal Rules of Bankruptcy Procedure, and MLBR 6004-1 and 6006-1.

## BACKGROUND

3.      On April 28, 2010 (the "Petition Date"), SW Boston and four Affiliated Debtors filed voluntary petitions under chapter 11 of Title 11 of the United States Code (the "Bankruptcy

---

[2] Capitalized terms not otherwise defined in this motion shall have the meanings ascribed to them in the Hotel PSA.

[3] This Sale Procedures Motion contains summaries of various terms of the Hotel PSA but is not meant to be a substitute for the Hotel PSA which contains additional terms and conditions. In the event of a conflict between this motion and the Hotel PSA, the Hotel PSA shall control.

#592433                                                         2

Code") with this Court. The other Affiliated Debtors filed their chapter 11 petitions on June 4, 2010. The Debtor continues to operate as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

4. Commencing in December 2010, the Debtor, in conjunction with its real estate advisor FTI Consulting, Inc. ("FTI"), initiated a process to explore the strategic alternatives and opportunities with respect to the Hotel. In that regard, FTI reviewed financial and other information related to the Hotel and the related businesses and prepared materials to be provided to potentially interested parties. FTI advised that publicly traded real estate investment trusts ("REITs") operating in the United States were most likely to recognize the value of the Hotel. Confidentiality agreements were executed with a number of REITs, including Pebblebrook, and detailed financial information and other data was provided to them with respect to the Property. The Debtor determined to pursue discussions with Pebblebrook, and permitted Pebblebrook to undertake extensive diligence with respect to the Hotel. Simultaneously with the due diligence process, the Debtor and Pebblebrook engaged in extensive negotiation with respect to the terms of an acquisition of the Hotel including the Hotel PSA and related documentation. The result of these efforts is embodied in the Hotel PSA that reflects no financing contingency or requirement for further due diligence.

5. Contemporaneously with the filing of this Sale Procedures Motion, the Debtor has filed the Sale Motion seeking authority to consummate the Hotel PSA.

6. The purchase price for the Property is $89,500,000 (the "Purchase Price"). The Purchase Price is subject to increase or decrease on account of proration and adjustment of income and expenses customarily prorated between a purchaser and a seller of hotel properties. Purchaser has made a good faith deposit of $5,000,000. The Liabilities of the Debtor to be

assumed by Purchaser (the "Assumed Liabilities") shall consist *solely* of the Hotel Payables for which Purchaser shall receive a credit against the Purchase Price at the Closing.

7. The Debtor seeks approval of Sale Procedures, the Break-Up Fee and Expense Reimbursement and procedures regarding the assumption and assignment of executory contracts and unexpired leases to ensure an orderly sale process and promote the maximum recovery for the Debtor's estate from the Property.

8. Purchaser may terminate the Hotel PSA if this Sale Procedures Motion is not approved by April 12, 2011 (fifteen days after the Effective Date of the Hotel PSA). In addition, Purchaser may terminate the Hotel PSA if the Sale Approval Order is not entered within 60 days after the Effective Date. The Hotel PSA provides that the Closing shall occur before 3:00 p.m. on the fifteenth (15th) day following the entry by the Bankruptcy Court of the Sale Approval Order provided that the Sale Approval Order is a Final Order.

### RELIEF REQUESTED

**A.    Sale Procedures**

9. The Debtor requests that the Bankruptcy Court enter an order substantially in the form attached hereto as <u>Exhibit A</u> approving the Sale Procedures (the "Sale Procedures Order") including the following provisions:

    a. Any competing bid shall be deemed to qualify as a competing bid (a "Competing Bid") only if: (i) made upon terms substantially similar to those set forth in the Hotel PSA for the purchase of all of the assets described in the Hotel PSA and (ii) for a cash amount of not less than $94,500,000.

    b. Subsequent overbids shall be in increments of at least $500,000 greater than the initial overbid.

    c. A Competing Bid must contain a case caption as set forth above and be filed, in accordance with the applicable Federal and local Rules of Bankruptcy Procedure,[4]

---

[4] Including, without limitation, the restrictions on facsimile filings pursuant to MLBR 5005-4.

with the United States Bankruptcy Court for the District of Massachusetts, John W. McCormack Post Office and Courthouse, 5 Post Office Square, Suite 1150, Boston, MA 02109-3945, on or before 4:30 p.m. on the fifth (5th) business day prior to the scheduled hearing (the "Sale Hearing") on the Sale Motion (the "Bid Deadline"). A Competing Bid must be served on counsel for the Debtor, counsel for The Prudential Insurance Company of America, counsel for the City of Boston, counsel for the Official Committee of Unsecured Creditors, Counsel for Razorbacks Owner LLC and the Office of the United States Trustee (collectively the "Service Parties").

d.  A Competing Bid must be accompanied by an executed purchase and sale agreement in the form of the Hotel PSA with such changes as are acceptable to the entity submitting the Competing Bid, including a purchase price expressed in U.S. Dollars and accompanied by all exhibits and schedules thereto (a "Competing PSA").

e.  The Competing Bid must be accompanied by a marked copy of the Competing PSA showing changes from the Hotel PSA.

f.  The terms and conditions of the Competing Bid must be, in aggregate, no less favorable to the Debtor than the provisions contained in the Hotel PSA. A Competing Bid must not be subject to contingencies for financing or the completion of due diligence.

g.  Any competing bidder must deliver a cash deposit to counsel for the Debtor at the time of submission of such bid. The cash deposit shall be in the form of a certified check or wire transfer of immediately available funds, and must be received on or before the Bid Deadline. The deposit delivered by a competing bidder will be forfeited in the event that such competing bidder is the successful bidder and fails to close on the sale through no fault of the Debtor. The deposit shall be $5,000,000.

h.  Any party submitting a Competing Bid shall demonstrate to the Debtor's satisfaction that: (i) it is financially able to consummate the transactions contemplated by the Competing Bid, in cash in the amount of the Competing Bid, which ability may be demonstrated by submission of bank statements, current audited or unaudited financial statements, or other reasonable evidence, or, if the bidder is an entity formed for the purpose of acquiring the assets in question, current audited or unaudited financial statements or other reasonable evidence of the financial capability of the equity holders of the bidder, (ii) it is able to perform under any assumed contracts and/or leases, (iii) it is able to fulfill any remaining obligations under the Competing PSA, and (iv) it has written evidence of a financing commitment sufficient to permit the consummation of the transactions in question.

#592433

    i.    Any party submitting a Competing Bid shall execute a confidentiality agreement that is, in form and substance, substantially the same as the confidentiality agreement executed by Purchaser.

    j.    An auction for the Property shall be held only if there is a Competing Bid. In the absence of a Competing Bid, the Debtor shall seek approval of the Sale to Purchaser, pursuant to the Hotel PSA.

    k.    Bidding at any auction for the Property shall be conducted by the Court immediately prior to the Sale Hearing in accordance with procedures to be announced at the time of the auction.

    l.    Only persons that have submitted a timely, qualified Competing Bid may participate in any auction.

    m.    Any party submitting a Competing Bid must agree to keep its offer open for at least twenty (20) days following the Sale Hearing.

**B.    Procedures for Assumption and Assignment of Executory Contracts and Unexpired Leases**

10.    With respect to executory contracts and/or unexpired leases that are assumed and assigned pursuant to the Hotel PSA (collectively, the "Assumed Contracts"), the Debtor proposes the following procedures:

    a.    Any interested party seeking to object to the assumption and assignment to any bidder, or to the validity of the cure amount, if any, as set forth in the Assumed Contract Notice (as defined below), or to otherwise assert that any amounts, defaults, conditions, or pecuniary losses (including accrued but not yet due obligations) that must be cured or satisfied under any of the Assumed Contracts in order for such contract or lease to be assumed and/or assigned (collectively, a "Cure Obligation"), must file and serve an objection (a "Assumption/Assignment Objection") so that such Assumption/Assignment Objection is docketed and received by the Service Parties not later than the Bid Deadline (the "Assumption/Assignment Objection Deadline").

    b.    An Assumption/Assignment Objection must set forth with specificity any and all Cure Obligations or conditions which such party asserts must be cured or satisfied in connection with the assumption and assignment of such Assumed Contract; provided, however, that any party to an Assumed Contract shall retain the right to object solely with respect to adequate assurance of future performance until the Sale Hearing only if such objection was raised in an Assumption/Assignment Objection on or prior to the Assumption/Assignment Objection Deadline. An Assumption/Assignment Objection shall set forth the cure amount that the objector asserts is due, the specific types and dates of the alleged defaults,

#592433    6

        pecuniary losses and conditions to assumption and assignment, and the support therefor, and all other objections to assumption and assignment.

    c.    Unless an Assumption/Assignment Objection is filed and served by the Assumption/Assignment Objection Deadline, all interested parties who have received actual notice of these procedures shall be deemed to have waived and released any right to assert a Cure Obligation and to have otherwise consented to the assumption and assignment and shall be forever barred and estopped from asserting or claiming against the Debtor, the buyer of the Property, or any other assignee of the relevant Assumed Contract that any additional amounts are due or defaults exist, or conditions to assignment must be satisfied, under such contract for the period prior to the Petition Date. Upon entry of the Sale Approval Order and Closing of the sale of the Property, each non-debtor party to each Assumed Contract will be required to fully perform all duties and obligations arising under such Assumed Contract, according to its terms.

    d.    Hearings with respect to any Assumption/Assignment Objections may be held (i) at the Sale Hearing, or (ii) at such other date as the Court may designate; provided that the subject Assumed Contract may be assumed and assigned prior to resolution of any Assumption/Assignment Objection, if the cure amount asserted by the objecting party (or such lower amount as may be fixed by the Court) is deposited by the Debtor to be held in a segregated account maintained by the Debtor or such other person as the Court may direct pending further order of the Court or mutual agreement of the parties.

    e.    Attached as <u>Exhibit B</u> is a proposed form of notice (the "Notice of Sale, Assumption and Assignment of Contracts and Payment of Warranty Claims") that includes information with respect to the procedures for the Assumed Contracts as well as Notice of the Sale Hearing. The Debtor proposes to serve the Notice of Sale, Assumption and Assignment of Contracts and Payment of Warranty Claims on all parties to the Assumed Contracts.

11.    In the event the party who submits the highest and best bid for the Property fails to close on the sale through no fault of the Debtor, the Debtor requests that the Sale Procedures Order provide that such party's Deposit be forfeited to the Debtor.

12.    If the party submitting the highest and best offer fails to close on the sale of the Property, the Debtor requests that the Sale Procedures Order provide the Debtor with the authority to sell the Property to the party submitting the next highest or best offer, as determined at the Sale Hearing without the necessity of further Court approval.

#592433        7

C.  **Expense Reimbursement and Break-Up Fee Provisions**

13. The Hotel PSA provides, in the event that Purchaser is not ultimately the successful bidder and in consideration of Purchaser's having expended considerable time and substantial expense in connection with the negotiation of the Hotel PSA and Purchaser's due diligence investigation of the Hotel and related property, that Purchaser is entitled to the Expense Reimbursement. The Expense Reimbursement will reimburse Purchaser for its reasonable, out-of-pocket costs and expenses (including reasonable attorneys' and consultants' fees) actually incurred in connection with the Hotel PSA and the related transactions in an amount not to exceed $500,000 (the "Expense Reimbursement"). In addition, Purchaser is entitled to a break-up fee equal to $2,800,000 (the "Break-Up Fee"). The Expense Reimbursement and Break-Up Fee are subject to Court approval and payable in the event an Alternative Transaction is consummated resulting in the sale of the Property to a third party. The Hotel PSA provides that the Expense Reimbursement and Break-Up Fee shall be paid to Purchaser within one (1) Business Day of the closing of the Alternative Transaction as an allowed administrative expense claim in the Bankruptcy Case pursuant to Section 503(b)(1) of the Bankruptcy Code with priority over every other claim allowable under such subsection.

D.  THE EXPENSE REIMBURSEMENT AND BREAK-UP FEE SHOULD BE APPROVED

14. Good and sufficient cause exists to approve the Expense Reimbursement and the Break-Up Fee.

15. It is standard in Chapter 11 cases for a debtor to request a break-up fee to compensate an initial bidder, in case it is not ultimately the successful bidder, for coming forward and starting the sale process. Courts have approved break-up fees ranging from one to five percent of the purchase price. *See* Dreher, Nancy C. and Feeney, Joan N., BANKRUPTCY LAW MANUAL §11A:38 (5th ed. West 2010). Break-up fees "are important tools to encourage

#592433                                                         8

bidding and to maximize the value of the debtor's assets." *In re Integrated Res., Inc.*, 147 B.R. 650, 659 (S.D.N.Y. 1992).

16. The Expense Reimbursement and the Break-Up Fee are the product of extensive negotiation between the Debtor and Purchaser. Purchaser has expended, and likely will continue to expend considerable time, money and energy pursuing the Sale and has engaged in extended and lengthy good faith negotiations. The Hotel PSA is the culmination of these efforts. The Expense Reimbursement and the Break-Up Fee provide reasonable and ordinary protection to Purchaser.

17. The Expense Reimbursement and the Break-Up Fee were material inducements for, and a condition of, Purchaser's entry into the Hotel PSA. Purchaser is unwilling to act as the stalking-horse bidder without the Expense Reimbursement and the Break-Up Fee. The Expense Reimbursement and Break-Up Fee are, therefore, reasonable and necessary costs of preserving the value of the Debtor's estate.

18. By having Purchaser as a stalking-horse bidder, much of the due diligence, contract negotiation and other work necessary to submit a bid for the Property will have been completed. This will shorten the time and cost required for prospective bidders to submit a Competing Bid and will therefore promote such bids. The sale of the Property as a going concern without a stalking-horse bidder would be more time consuming, more expensive and would likely lead to fewer competitive bids. The approval of the Expense Reimbursement and the Break-Up Fee will, therefore, benefit the Debtor's bankruptcy estate.

19. The Expense Reimbursement and the Break-Up Fee are common in sales of this type and complexity and are reasonable given the size and complexity of the transaction contemplated by the Hotel PSA. The Break-Up Fee represents approximately three and one

tenths percent (3.1%) of the Purchase Price. The Expense Reimbursement represents approximately five tenths of one percent (0.5%) of the Purchase Price.

20. Therefore, the Expense Reimbursement and the Break-Up Fee should be approved.

E. **The Sale Procedures Should Be Approved**

21. The Sale Procedures are usual and ordinary sale procedures for going-concern sales in this district and should be approved.

22. The paramount purpose of any sale of property of the estate is maximization of the proceeds to be received. *See, e.g., In re Mushroom Transp. Co., Inc.*, 382 F3d 325, 339 (3d Cir. 2004). Courts recognize that bid procedures are an effective way to enhance competitive bidding and maximize the value to be received from sales of estate property. *See Integrated Res.*, 147 B.R. at 659-60.

23. The proposed Sale Procedures will establish parameters under which the value of the Property may be tested at the Sale Hearing. The Sale Procedures will enable the Debtor to conduct an auction in a controlled, open and fair fashion. This, in turn, will encourage active bidding from financially capable parties and dispel any doubts as to the highest and best offer for the Property. The Sale Procedures are consistent with sale procedures previously approved by this Court. *See, e.g.*, In re GPX International Tire Corp., Case No. 09-20170 (Bankr. D. Mass October 30, 2009) [Docket No. 98]. The required first overbid increment of $5,000,000 is modest compared to the Purchase Price, only approximately five and three tenths percent (5.3%) of the Purchase Price. This percentage is only marginally above the percentage at which no approval at all would be necessary under the Local Rules. *See* MLBR 6004-1(c)(2)(B)(ii) (The movant must obtain prior approval from the court of any terms for the proposed sale protecting

the initial proposed purchaser, including . . . . the minimum increase required for a higher offer, unless . . . . (ii) the minimum increase required for a higher offer does not exceed 5% of the proposed original purchase price."). Subsequent overbid increments are much smaller, $500,000, representing only one half of one percent of the original Purchase Price.

24.     Therefore, the proposed Sale Procedures should be approved.

### F.  Notice of Sale

25.     Appended to this Sale Procedures Motion as <u>Exhibit B</u> is the proposed form of Notice of Sale, Assumption and Assignment of Contracts and Payment of Warranty Claims. Once the Court provides the Debtor with the date for the Sale Hearing and the deadline for filing objections to the Sale Motion and submission of counterbids, the Debtor will serve the Notice of Sale, Assumption and Assignment of Contracts and Payment of Warranty Claims on all interested parties. The Debtor respectfully requests that the Court schedule the hearing on this Sale Procedures Motion prior to April 12, 2011, because after that date Purchaser is entitled to terminate the Hotel PSA if the Sale Procedures Motion has not been approved. The Debtor similarly requests that the Court schedule the Sale Hearing prior to May 27, 2011, and allow for the possibility of a contested hearing, because after that date Purchaser is entitled to terminate the Hotel PSA if the Sale Approval Order has not been entered.

26.     Upon receipt of the date scheduled for the Sale Hearing and the deadline for filing objections to the Sale Motion and submission of counterbids, the Debtor will serve the Notice of Sale, Assumption and Assignment of Contracts and Payment of Warranty Claims on the following parties:

       a.     counsel to the Official Committee of Unsecured Creditors in these jointly administered bankruptcy cases;

#592433                                                                 11

b.  counsel to The Prudential Insurance Company of America and the City of Boston, the Debtor's prepetition lenders;

c.  any party who, in the past year, expressed in writing to the Debtor an interest in the Property;

d.  non-debtor parties to the Assumed Contracts;

e.  all parties who are known or reasonably believed to have asserted a lien, encumbrance, claim or other interest in the Property;

f.  all holders of Warranty Claims;

g.  the Securities and Exchange Commission;

h.  the Internal Revenue Service;

i.  the Massachusetts Attorney General and the Massachusetts Department of Environmental Protection;

j.  all applicable state and local taxing authorities;

k.  the Office of the United States Trustee for the District of Massachusetts;

l.  the Federal Trade Commission;

m.  the United States Attorney General/Antitrust Division of Department of Justice;

n.  the Environmental Protection Agency;

o.  the U.S. Department of Labor and the Massachusetts Department of Labor;

p.  the United States Attorney;

q.  Corporation Counsel for the City of Boston, Massachusetts;

r.  Director of the Department of Neighborhood Development, Public Facilities Commission, City of Boston, Massachusetts

s.  all attorneys who have filed notices of appearance in these jointly administered chapter 11 cases;

t.  all entities that have requested notice in the jointly administered chapter 11 cases;

u.  all of the employees of the Debtor; and

v.  all other parties identified on the creditor matrix in these cases.

### NOTICE

27.  Copies of this Sale Procedures Motion have been served upon: (i) the Office of the United States Trustee; (ii) counsel for The Prudential Insurance Company of America; (iii) counsel for the City of Boston; (iv) counsel for the Official Committee of Unsecured Creditors; and (v) all parties who have filed a notice of appearance and request for notice in these proceedings. The Debtor requests that such notice be deemed sufficient and appropriate notice.

WHEREFORE, the Debtor requests that the Court:

(a)  Schedule a hearing on this Sale Procedures Motion prior to April 12, 2011,

(b)  Schedule the hearing on the Sale Motion prior to May 27, 2011, as well as schedule the date for filing objections to the Sale Motion and submission of counterbids,

(c)  Approve this Sale Procedures Motion,

(d)  Approve the Sale Procedures,

(e)  Approve the Expense Reimbursement and the Break-Up Fee,

(f)  Approve the procedures with respect to the assumption and assignment of Assumed Contracts,

(g)  Enter the Sale Procedures Order, substantially in the form attached as Exhibit A,

#592433                                          13

    (h)    Approve the Notice of Sale and Assumption, Assignment of Contracts and Payment of Warranty Claims attached hereto as <u>Exhibit B</u>, and

    (g)    Grant such other relief as is just and proper.

Respectfully submitted,

SW BOSTON HOTEL VENTURE, LLC

By its counsel,

<u>/s/ John C. Elstad</u>
Harold B. Murphy (BBO#326610)
D. Ethan Jeffery (BBO#631941)
John C. Elstad (BBO #654469)
MURPHY & KING, Professional Corporation
One Beacon Street
Boston, Massachusetts 02108
Phone: (617) 423-0400
Fax: (617) 423-0498

Dated: March 28, 2011