# IN RE: SW BOSTON HOTEL VENTURE, LLC, ET AL.
# BANKRUPTCY NO. 10-14535 (JNF)

### EXHIBIT A TO

### MOTION BY DEBTOR FOR APPROVAL OF (A) SALE PROCEDURES, (B) BREAK-UP FEE AND EXPENSE REIMBURSEMENT PROVISIONS AND (C) (1) PROCEDURES FOR ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND (2) FORM OF NOTICE OF CONTRACT ASSUMPTION AND ASSIGNMENT AND CURE AMOUNTS IN CONNECTION WITH SALE OF THE DEBTOR'S COMMERCIAL UNIT, PARKING GARAGE UNIT AND RELATED ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES

(Proposed Form of Order Establishing Sale Procedres)

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(Eastern Division)

| | |
|---|---|
| In re:<br><br>SW BOSTON HOTEL VENTURE, LLC[1], *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 10-14535-JNF<br><br>(Jointly Administered) |

### ORDER ESTABLISHING SALE PROCEDURES

SW Boston Hotel Venture LLC (the "Debtor"), a debtor and debtor-in-possession in the above captioned case, having filed its *Motion by Debtor for Approval of (A) Sale Procedures, (B) Break-up Fee and Expense Reimbursement Provisions and (C) (1) Procedures for Assumption and Assignment of Executory Contracts and Unexpired Leases, and (2) Form of Notice of Contract Assumption and Assignment and Cure Amounts in Connection with the Sale of the Debtor's Commercial Unit, Parking Garage Unit and Related Assets Free and Clear of All Liens, Claims, Interests and Encumbrances* (the "Sale Procedures Motion") seeking the approval of sale procedures with respect to the Debtor's proposed sale of certain of the Debtor's assets to Razorbacks Owner LLC ("Purchaser"); and the Court having considered the Sale Procedures Motion and all pleadings associated with that motion; and upon the arguments of counsel and the evidence presented at the hearing on the Sale Procedures Motion; and after due deliberation and sufficient cause therefore,

---

[1] The other debtors in the jointly administered cases, besides SW Boston are Auto Sales & Service, Inc. (Case No. 10-14528-JNF), General Trading Company (Case No. 10-14532-JNF), Frank Sawyer Corporation (Case No. 10-14533-JNF), 100 Stuart Street, LLC (Case No. 10-14534-JNF), 30-32 Oliver Street Corporation (Case No. 10-16173-JNF), General Land Corporation (Case No. 10-16174-JNF) and 131 Arlington Street Trust (Case No. 10-16177-JNF) (the other debtors, not including SW Boston, the "Affiliated Debtors").

#592434

**THIS COURT HEREBY FINDS THAT:**

A. Capitalized terms not otherwise defined in this order shall have the respective meanings attributed to such terms in the Sale Motion.

B. This Court has jurisdiction over the Bankruptcy Case pursuant to 28 U.S.C. §§ 1334(a) and 157(b)(1). Venue of the Bankruptcy Case in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

C. The Debtor has filed the *Debtor's Motion for Order (I) Authorizing the Sale of the Debtor's Commercial Unit, Parking Garage Unit and Related Assets Free and Clear of All Liens, Claims, Interests and Encumbrances, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Conjunction Therewith and (III) for Related Relief* (the "Sale Motion"). The Sale Motion seeks the approval of a purchase and sale agreement between the Debtor and Purchaser (the "Hotel PSA") that contemplates the sale, as a going concern, of certain of the Debtor's assets (the "Property") related to its hotel and garage operations, as more fully described in the Sale Motion and Hotel PSA. The Sale of the Property will be by private sale free and clear of all liens, claims and interests.

D. Purchaser has submitted a $5,000,000 deposit (the "Deposit") into an escrow account (the "Escrow Account") and has executed an escrow agreement with the Debtor to govern such account (the "Escrow Agreement").

E. The Hotel PSA provides that Purchaser is entitled to a break-up fee of $2,800,000 (the "Break-Up Fee") plus reimbursement of up to $500,000 of Purchaser's reasonable, documented out-of-pocket expenses incurred in connection with negotiating the Hotel PSA and the transactions contemplated by the Hotel PSA, and conducting due diligence related to the Hotel PSA and the Sale (the "Expense Reimbursement").

F. Purchaser has expended, and likely will continue to expend considerable time, and substantial money and energy pursuing the sale and has engaged in extended and lengthy good faith negotiations. The Hotel PSA is the culmination of these efforts.

G. The Break-Up Fee and Expense Reimbursement provisions were a material inducement for, and a condition of, Purchaser's entry into the Hotel PSA. Purchaser is unwilling to act as the stalking-horse bidder without the Break-Up Fee and Expense Reimbursement. By having Purchaser as a stalking-horse bidder, much of the due diligence, contract negotiation and other work necessary to submit a bid for the Property will have been completed. This will shorten the time and cost required for prospective bidders to submit a Competing Bid (as defined below) and will therefore promote such bids. The sale of the Property as a going concern without a stalking-horse bidder would be more time consuming, more expensive and would likely lead to fewer competitive bids. In addition, Purchaser is unwilling to proceed with the Sale and close the Hotel PSA without Bankruptcy Court approval of the Break-Up Fee and the Expense Reimbursement. The approval of the Break-Up Fee and Expense Reimbursement will therefore benefit the Debtor's bankruptcy estate. Break-Up Fees and Expense Reimbursements are common in sales of this type and complexity.

H. The Break-Up Fee was negotiated by the parties in good faith and at arms' length, and is fair and reasonable in view of, among other things, (a) the intensive analysis, due diligence investigation, and negotiation undertaken by Purchaser in connection with the Sale, and (b) the fact that Purchaser' efforts have increased the chances that the Debtor will receive the highest and best offer available for the Property by establishing a bid standard or minimum for other bidders, placing the property of the Debtor's estate in a sale mode thereby potentially attracting other bidders to the auction and serving as a catalyst for other potential or actual

bidders for the Property, to the benefit of the Debtor, its estate, its creditors and all other parties in interest.

I.    Notice of the Sale Procedures Motion was appropriate under the circumstances, and no further notice is required.

J.    The Court has scheduled hearings on the Sale Motion on _____, 2011 at _____.m. (the "Sale Hearing").

K.    Good and sufficient cause exists for the entry of this Order.

**NOW THEREFORE**, it is **HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:**

1. The Sale Procedures Motion is hereby granted in its entirety.

2. The following Sale procedures shall apply to the sale of the Property:

   a. Any competing bid shall be deemed to qualify as a competing bid (a "Competing Bid") only if: (i) made upon terms substantially similar to those set forth in the Hotel PSA for the purchase of all of the assets described in the Hotel PSA and (ii) for a cash amount of not less than $94,500,000.

   b. Subsequent overbids shall be in increments of at least $500,000 greater than the initial overbid.

   c. A Competing Bid must contain a case caption as set forth above and be filed, in accordance with the applicable Federal and local Rules of Bankruptcy Procedure,[2] with the United States Bankruptcy Court for the District of Massachusetts, John W. McCormack Post Office and Courthouse, 5 Post Office Square, Suite 1150, Boston, MA 02109-3945, on or before 4:30 p.m. on the fifth (5th) business day prior to the scheduled hearing (the "Sale Hearing") on the Sale Motion (the "Bid Deadline"). A Competing Bid must be served on counsel for the Debtor, counsel for The Prudential Insurance Company of America, counsel for the City of Boston, counsel for the Official Committee of Unsecured Creditors, counsel for Razorbacks Owner LLC and the Office of the United States Trustee (collectively the "Service Parties").

---

[2] Including, without limitation, the restrictions on facsimile filings pursuant to MLBR 5005-4.

#592434                         4

d. A Competing Bid must be accompanied by an executed purchase and sale agreement in the form of the Hotel PSA with such changes as are acceptable to the entity submitting the Competing Bid, including a purchase price expressed in U.S. Dollars and accompanied by all exhibits and schedules thereto (a "Competing PSA").

e. The Competing Bid must be accompanied by a marked copy of the Competing PSA showing changes from the Hotel PSA.

f. The terms and conditions of the Competing Bid must be, in aggregate, no less favorable to the Debtor than the provisions contained in the Hotel PSA. A Competing Bid must not be subject to contingencies for financing or the completion of due diligence.

g. Any competing bidder must deliver a cash deposit to counsel for the Debtor at the time of submission of such bid. The cash deposit shall be in the form of a certified check or wire transfer of immediately available funds, and must be received on or before the Bid Deadline. The deposit delivered by a competing bidder will be forfeited in the event that such competing bidder is the successful bidder and fails to close on the sale through no fault of the Debtor. The deposit shall be $5,000,000.

h. Any party submitting a Competing Bid shall demonstrate to the Debtor's satisfaction that: (i) it is financially able to consummate the transactions contemplated by the Competing Bid, in cash in the amount of the Competing Bid, which ability may be demonstrated by submission of bank statements, current audited or unaudited financial statements, or other reasonable evidence, or, if the bidder is an entity formed for the purpose of acquiring the assets in question, current audited or unaudited financial statements or other reasonable evidence of the financial capability of the equity holders of the bidder, (ii) it is able to perform under any assumed contracts and/or leases, (iii) it is able to fulfill any remaining obligations under the Competing PSA, and (iv) it has written evidence of a financing commitment sufficient to permit the consummation of the transactions in question.

i. Any party submitting a Competing Bid shall execute a confidentiality agreement that is, in form and substance, substantially the same as the confidentiality agreement executed by Purchaser.

j. An auction for the Property shall be held only if there is a Competing Bid. In the absence of a Competing Bid, the Debtor shall seek approval of the Sale to Purchaser, pursuant to the Hotel PSA.

#592434                                       5

k. Bidding at any auction for the Property shall be conducted by the Court immediately prior to the Sale Hearing in accordance with procedures to be announced at the time of the auction.

l. Only persons that have submitted a timely, qualified Competing Bid may participate in any auction.

m. Any party submitting a Competing Bid must agree to keep its offer open for at least twenty (20) days following the Sale Hearing.

3. The following procedures shall apply with respect to executory contracts and/or unexpired leases that are proposed to be assumed and assigned pursuant to the Hotel PSA (collectively the "Assumed Contracts"):

a. Any interested party seeking to object to the assumption and assignment to any bidder, or to the validity of the cure amount, if any, as set forth in the Notice of Sale and Assumption and Assignment of Contracts (as defined below), or to otherwise assert that any amounts, defaults, conditions, or pecuniary losses (including accrued but not yet due obligations) that must be cured or satisfied under any of the Assumed Contracts in order for such contract or lease to be assumed and/or assigned (collectively, a "Cure Obligation"), must file and serve an objection (a "Assumption/Assignment Objection") so that such Assumption/Assignment Objection is docketed and received by the Service Parties not later than the Bid Deadline (the "Assumption/Assignment Objection Deadline").

b. An Assumption/Assignment Objection must set forth with specificity any and all Cure Obligations or conditions which such party asserts must be cured or satisfied in connection with the assumption and assignment of such Assumed Contract; provided, however, that any party to an Assumed Contract shall retain the right to object solely with respect to adequate assurance of future performance until the Sale Hearing only if such objection was raised in an Assumption/Assignment Objection on or prior to the Assumption/Assignment Objection Deadline. An Assumption/Assignment Objection shall set forth the cure amount that the objector asserts is due, the specific types and dates of the alleged defaults, pecuniary losses and conditions to assumption and assignment, and the support therefor, and all other objections to assumption and assignment.

c. Unless an Assumption/Assignment Objection is filed and served by the Assumption/Assignment Objection Deadline, all interested parties who have received actual notice of these procedures shall be deemed to have waived and released any right to assert a Cure Obligation and to have otherwise consented to the assumption and assignment and shall be

#592434                                  6

forever barred and estopped from asserting or claiming against the Debtor, the buyer of the Property, or any other assignee of the relevant Assumed Contract that any additional amounts are due or defaults exist, or conditions to assignment must be satisfied, under such contract for the period prior to the Petition Date. Upon entry of the Sale Approval Order and Closing of the sale of the Property, each non-debtor party to each Assumed Contract will be required to fully perform all duties and obligations arising under such Assumed Contract, according to its terms.

    d.    Hearings with respect to any Assumption/Assignment Objections may be held (i) at the Sale Hearing, or (ii) at such other date as the Court may designate; provided that the subject Assumed Contract may be assumed and assigned prior to resolution of any Assumption/Assignment Objection if the cure amount asserted by the objecting party (or such lower amount as may be fixed by the Court) is deposited by the Debtor to be held in a segregated account maintained by the Debtor or such other person as the Court may direct pending further order of the Court or mutual agreement of the parties.

    e.    The Debtor proposes to serve the Notice of Sale, Assumption and Assignment of Contracts and Payment of Warranty Claims (as defined below) on all parties to the Assumed Contracts.

4. The proposed form of notice (the "Notice of Sale, Assumption and Assignment of Contracts and Payment of Warranty Claims") attached to the Sale Procedures Motion as Exhibit B is hereby approved, and the Debtor is authorized to serve, via First Class U.S. mail, the Notice of Sale, Assumption and Assignment of Contracts and Payment of Warranty Claims on all parties to Assumed Contracts, and no other notice is necessary or required with respect to the assumption and assignment of the Assumed Contracts.

5. If the party submitting the highest and best offer fails to close on the sale of the Property, the Debtor is authorized, but not directed, to sell the Property to the party submitting the next highest or best offer without the necessity of further Court approval; provided that nothing in this order shall modify the ability of the Debtor or Purchaser to terminate the Hotel PSA according to its terms.

6. In the event the party who submits the highest and best bid for the Property fails to close on the sale through no fault of the Debtor, such party's Deposit shall be forfeited to the Debtor.

7. The provisions of Section 4.2(c) of the Hotel PSA, requiring the Debtor to pay the Break-Up Fee and the Expense Reimbursement, if and when such obligation arises under the terms and conditions set forth therein, are as follows and are hereby approved:

> In the event the Hotel PSA is terminated by Seller or Purchaser pursuant to Section 4.3(a)(iv) of the Hotel PSA due to an Alternative Transaction (as defined below and in Section 4.2(b) of the Hotel PSA), in consideration of Purchaser's having expended considerable time and expense in connection with the negotiation of the Hotel PSA and Purchaser's due diligence investigation of the Hotel and related property, and subject to the closing of the Alternative Transaction, Seller shall reimburse Purchaser for reasonable, out-of-pocket costs and expenses (including reasonable attorneys' and consultants' fees) actually incurred by Purchaser in connection with the Hotel PSA and the transactions contemplated thereby, such costs and expenses to be evidenced by invoices and/or other documentation provided by Purchaser, in an amount not to exceed $500,000.00. In addition, Seller shall also pay to Purchaser a Break-Up fee equal to $2,800,000.00. The Expense Reimbursement and Break-Up Fee shall be paid to Purchaser within one (1) Business Day of the closing of the Alternative Transaction as an allowed administrative expense claim in the Bankruptcy Case pursuant to Section 503(b)(1) of the Bankruptcy Code, which shall have priority over every other claim allowable under such subsection.

> "Alternative Transaction" means the sale, transfer, lease or other disposition, directly or indirectly, including through an asset sale, stock sale, merger or other similar transaction, of the Property in a transaction or a series of transactions with one or more persons or entities, other than Purchaser.

8. Purchaser' right to the Break-Up Fee and Expense Reimbursement, under the terms and conditions set forth in the Hotel PSA, is hereby deemed to be an allowed administrative expense claim against the Debtor under section 503(b) of the Bankruptcy Code with priority over every other claim allowable under such subsection. The Debtor is authorized and directed to immediately pay the Break-Up Fee and Expense Reimbursement in the time and manner set forth in Section 4.2(c) of the Hotel PSA, if and when the Debtor's obligation arises

#592434                                   8

thereunder, without any other or further notice or order of this Court. The Debtor's obligation to pay the Break-Up Fee and Expense Reimbursement (i) shall survive termination of the Hotel PSA, (ii) shall not be discharged, modified or otherwise affected by any plan of reorganization or liquidation of the Debtor or any order dismissing the Debtor's chapter 11 case or converting it to a chapter 7 liquidation and (iii) shall be binding on any trustee subsequently appointed in this case.

9.   The Escrow Account, and the contents thereof, do not constitute property of the Debtor's bankruptcy estate under Section 541 of the Bankruptcy Code. The Debtor's and Purchaser' rights to the Escrow Account, and its contents, shall be governed by the Escrow Agreement and the Hotel PSA. The Debtor's rights under the Escrow Agreement and the Hotel PSA in respect of the Escrow Account are property of the Debtor's bankruptcy estate. Notwithstanding the foregoing, the funds on deposit in the Escrow Account shall be released to Purchaser or the Debtor in accordance with the terms of the Escrow Agreement without further notice or order of the Court (and the automatic stay under Section 362 of the Bankruptcy Code is hereby waived to the extent necessary to permit such release and any actions that may be necessary or proper for any party to take to effectuate such release in accordance with the terms of the Escrow Agreement and the Hotel PSA).

10.   This Court shall retain jurisdiction over any matters related to or arising from the implementation of this Order, including to (i) interpret, implement and enforce the provisions of this Order and the Hotel PSA (including, without limitation, the provisions related to the Break-Up Fee and Expense Reimbursement), any subsequent amendments to, modifications of, consents relating to or waivers thereof and any related documents (including, without limitation, the Escrow Agreement); (ii) enforce Purchaser' rights with respect to its administrative expense

#592434                                                9

claims granted hereunder; and (iii) adjudicate all matters concerning the Sale Procedures, the Sale Motion, this Order or the Hotel PSA.

11.  The Debtor is hereby authorized and empowered to take such steps, expend such sums of money and do such other things as may be necessary to implement and effect the terms and requirements established by this Order.

Dated: _____, 2011

_____
Honorable Joan N. Feeney
UNITED STATES BANKRUPTCY JUDGE