# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
### EASTERN DIVISION

| | |
|---|---|
| _____ ) | |
| In re ) | |
| ) | **Chapter 11** |
| **SW BOSTON HOTEL VENTURE LLC,** *et al.*,[1] ) | **Case No. 10-14535 (JNF)** |
| ) | |
| **Debtors** ) | **Jointly Administered** |
| _____ ) | |

---

## PLAN OF REORGANIZATION UNDER CHAPTER 11
## OF THE UNITED STATES BANKRUPTCY CODE PROPOSED
## BY THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, ON BEHALF
## AND SOLELY FOR THE BENEFIT OF, AND WITH ITS LIABILITY LIMITED
## TO THE ASSETS OF, ITS INSURANCE COMPANY SEPARATE ACCOUNT, PRISA

---

Dated:  June 27, 2011

GOODWIN PROCTER LLP
Emanuel C. Grillo
The New York Times Building
620 Eighth Avenue
New York, New York 10018-1405
Telephone:  (212) 813-8800
Facsimile:  (212) 355-3333
Email:  egrillo@goodwinprocter.com

GOODWIN PROCTER LLP
Gina Lynn Martin
Exchange Place
Boston, Massachusetts 02109
Telephone (617) 570-1000
Facsimile (617) 523-1231
Email: gmartin@goodwinprocter.com

*Attorneys for The Prudential Insurance Company of America on Behalf and Solely for the Benefit of, and with its Liability Limited to the Assets of, its Insurance Company Separate Account, PRISA*

---

[1]  The "Debtors" are SW Boston Hotel Venture LLC (Case No. 10-14535-JNF), Auto Sales & Service, Inc. (Case No. 10-14528-JNF), General Trading Company (Case No. 10-14532-JNF), Frank Sawyer Corporation (Case No. 10-14533-JNF), 100 Stuart Street, LLC (Case No. 10-14534-JNF), 30-32 Oliver Street Corporation (Case No. 10-16173-JNF), General Land Corporation (Case No. 10-16174-JNF), and 131 Arlington Street Trust (Case No. 10-16177-JNF) (their cases collectively the "Chapter 11 Cases").

## Table of Contents

**Page**

**ARTICLE 1 Definitions and Interpretation**.......................................................................**1**
    **1.1    Defined Terms** ....................................................................................1
    **1.2    Rules of Interpretation** ....................................................................12
    **1.3    Appendices and Plan Documents.** .....................................................13

**ARTICLE 2 PROVISIONS FOR THE ALLOWANCE AND PAYMENT OF**
    **UNCLASSIFIED CLAIMS:  ADMINISTRATIVE AND PRIORITY TAX**
    **CLAIMS**.........................................................................................................**13**
    **2.1    Administrative Claims**....................................................................13
    **2.2    Priority Tax Claims** ........................................................................14

**ARTICLE 3 CLASSIFICATION OF CLAIMS AND INTERESTS** ...................................**14**
    **3.1    Summary of Classification; Class Identification**...........................14

**ARTICLE 4 PROVISIONS FOR TREATMENT OF  CLASSIFIED CLAIMS AND**
    **EQUITY INTERESTS** ...............................................................................**18**
    **4.1    Class 1:  Allowed Other Priority Claims**.......................................18
    **4.2    Class 2:  Prudential Loan Claims**...................................................19
    **4.3    Class 3:  Prudential Guaranty Claims** ...........................................19
    **4.4    Class 4:  City Claim** .......................................................................20
    **4.5    Class 5:  Other Secured Claims** ....................................................21
    **4.6    Class 6:  General Unsecured Claims** .............................................22
    **4.7    Class 7:  Insider and Affiliate Debtor Unsecured Claims.** ..............23
    **4.8    Class 8:  Interests in the Debtors** .................................................23

**ARTICLE 5 NEW PRUDENTIAL NOTE** ..........................................................................**24**
    **5.1    Terms** .............................................................................................24
    **5.2    Amount**...........................................................................................24

**ARTICLE 6 MEANS FOR IMPLEMENTATION OF THE PLAN** ....................................**24**
    **6.1    Sources of Consideration for Plan Distributions** ..........................24
    **6.2    Resignation of Current Officers and Directors.**.............................24
    **6.3    Section 1145 Exemption** .................................................................24
    **6.4    Corporate Existence**.......................................................................25
    **6.5    Cancellation of Existing Equity Interests in Affiliate Debtors** ......25
    **6.6    Issuance of New Membership Interests / Common Stock**................25
    **6.7    Vesting of Assets in the Post-Effective Date Liquidating Entity** ....25
    **6.8    Vesting of Assets in Reorganized SW Boston**................................25
    **6.9    Cancellation of Securities and Agreements** ..................................26
    **6.10  Operations Between the Confirmation Date and the Effective Date.** ..........26
    **6.11  Restructuring Transactions** ..........................................................26
    **6.12  Corporate Action; Amended Articles of Incorporation and Amended**
            **Bylaws** ...........................................................................................26

i

|        |                                                                          |      |
| ------ | ------------------------------------------------------------------------ | ---- |
| 6.13   | Effectuating Documents; Further Transactions                             | 26   |
| 6.14   | Exemption from Certain Taxes and Fees                                    | 27   |
| 6.15   | Preservation of Rights of Action                                        | 27   |

**ARTICLE 7 TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** .......................................................................................... **28**

|        |                                                                          |      |
| ------ | ------------------------------------------------------------------------ | ---- |
| 7.1    | Assumption and Rejection of Executory Contracts and Unexpired Leases     | 28   |
| 7.2    | Payments Related to Assumption of Executory Contracts and Unexpired Leases | 28   |
| 7.3    | Claims Arising From Rejection of Executory Contracts or Unexpired Leases | 28   |
| 7.4    | Intercompany Contracts, Contracts, and Leases Entered Into After the Petition Date | 29   |
| 7.5    | Modifications, Amendments, Supplements, Restatements, or Other Agreements | 29   |
| 7.6    | Reservation of Rights                                                    | 29   |

**ARTICLE 8 PROVISIONS GOVERNING DISTRIBUTIONS** ............................................ **29**

|        |                                                                          |      |
| ------ | ------------------------------------------------------------------------ | ---- |
| 8.1    | Timing and Calculation of Amounts to Be Distributed                     | 29   |
| 8.2    | Disbursing Agent                                                        | 30   |
| 8.3    | Rights and Powers of Disbursing Agent                                   | 30   |
| 8.4    | Distributions on Account of Claims and Interests Allowed After the Effective Date | 30   |
| 8.5    | Delivery of Distributions and Undeliverable or Unclaimed Distributions  | 31   |
| 8.6    | Distribution Record Date                                                | 31   |
| 8.7    | Compliance with Tax Requirements/Allocations                            | 31   |
| 8.8    | Claims Paid or Payable by Third Parties                                 | 32   |

**ARTICLE 9 PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS AND DISPUTED INTERESTS** ......................................................................................................... **32**

|        |                                                                          |      |
| ------ | ------------------------------------------------------------------------ | ---- |
| 9.1    | Prosecution of Objections to Claims and Disputed Interests              | 32   |
| 9.2    | Estimation of Contingent or Unliquidated Claims                         | 33   |
| 9.3    | Allowance of Claims and Interests                                       | 33   |
| 9.4    | No Distributions Pending Allowance                                      | 33   |
| 9.5    | Distributions After Allowance                                           | 33   |
| 9.6    | No De Minimis Distributions; Residual Cash.                             | 33   |

**ARTICLE 10 SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS** ............................................................................................ **34**

|        |                                                                          |      |
| ------ | ------------------------------------------------------------------------ | ---- |
| 10.1   | Discharge of Claims and Termination of Interests                        | 34   |
| 10.2   | Compromise and Settlement of Claims, Interests, and Controversies       | 34   |
| 10.3   | Debtor Release of Prudential                                            | 34   |
| 10.4   | Injunction                                                              | 35   |
| 10.5   | Setoffs                                                                 | 36   |

LIBNY/5004629.10

**10.6**      **Release of Liens** ..................................................................36

**ARTICLE 11 CONDITIONS PRECEDENT TO CONFIRMATION AND
CONSUMMATION OF THE PLAN** ..................................................**37**
     **11.1**      **Conditions Precedent to Confirmation** ..........................................37
     **11.2**      **Conditions Precedent to Consummation** ........................................37
     **11.3**      **Waiver of Conditions Precedent and Bankruptcy Rule 3020(e)
Automatic Stay** .....................................................................37
     **11.4**      **Effect of Non-Occurrence of Conditions to Consummation** ...........37

**ARTICLE 12 MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE
PLAN** ...........................................................................................**38**
     **12.1**      **Plan Modification and Other Amendments** ...................................38
     **12.2**      **Effect of Confirmation on Modifications** .......................................38
     **12.3**      **Revocation or Withdrawal of the Plan** ..........................................38

**ARTICLE 13 RETENTION OF JURISDICTION** ....................................................**39**

**ARTICLE 14 MISCELLANEOUS PROVISIONS** .....................................................**41**
     **14.1**      **Immediate Binding Effect** ..........................................................41
     **14.2**      **Additional Documents** ...............................................................41
     **14.3**      **Payment of Statutory Fees** .........................................................41
     **14.4**      **Section 1125(e) of the Bankruptcy Code** .....................................41
     **14.5**      **Dissolution of Committee** ..........................................................42
     **14.6**      **Termination of Professionals** .....................................................42
     **14.7**      **No Admissions** .........................................................................42
     **14.8**      **Reservation of Rights** ...............................................................42
     **14.9**      **Successors and Assigns** ............................................................42
     **14.10**    **Service of Documents** ...............................................................42
     **14.11**    **Term of Injunctions or Stays** ....................................................43
     **14.12**    **Entire Agreement** ....................................................................43
     **14.13**    **Nonseverability of Plan Provisions** ............................................43
     **14.14**    **Plan Controls Disclosure Statement; Confirmation Order Controls
Plan** ......................................................................................43
     **14.15**    **Governing Law** ........................................................................43
     **14.16**    **Courts of Competent Jurisdiction** .............................................44

LIBNY/5004629.10

The Prudential Insurance Company of America, on behalf and solely for the benefit of, and with its liability limited to the assets of, its insurance company separate account, PRISA ("**Prudential**") proposes the following chapter 11 plan of reorganization, pursuant to section 1121(a) of title 11 of the United States Code:

## ARTICLE 1
### Definitions and Interpretation

**1.1**    **Defined Terms**.  The following terms, when capitalized, shall have the meanings specified below, and such means shall be equally applicable to the singular and plural forms of such terms.  Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

(1)    "**100 Stuart Street**" means 100 Stuart Street, LLC, a Debtor in the Chapter 11 Cases.

(2)    "**Accrued Professional Compensation**" means, at any given moment, all accrued fees and expenses for services rendered by a Professional from and including the Petition Date through and including the Effective Date, to the extent such fees and expenses have not been paid pursuant to the Interim Compensation Order or other order of the Bankruptcy Court and regardless of whether a fee application has been Filed for such fees and expenses.  To the extent the Bankruptcy Court or any higher court denies or reduces by a Final Order any amount of a Professional's fees or expenses, then the amount by which such fees or expenses are reduced or denied shall no longer constitute Accrued Professional Compensation.

(3)    "**Additional Guaranty Documents**" means, collectively, the following documents:

(i)    Guaranty by Oliver Street Corp. of the FSC Guaranty Obligations to Prudential, dated January 15, 2008;

(ii)    Guaranty by Auto Sales of the FSC Guaranty Obligations, dated January 15, 2008

(iii)    Guaranty by General Trading of the FSC Obligations, dated January 15, 2008;

(iv)    Guaranty by 131 Arlington Trust of the FSC Obligations to Prudential, dated December 22, 2008;

(v)    Guaranty by General Land of the FSC Obligations to Prudential, dated December 22, 2008.

(4)    "**Additional Guaranty Obligations**" means any obligation of a Guarantor under or related to the Additional Guaranty Documents.

(5)      "**_Additional Prudential Collateral_**" means the collateral pledged by each of the Guarantors to Prudential in connection with the Prudential Loan and the guaranties provided thereunder.

(6)      "**_Administrative Claim_**" means a Claim for costs and expenses of administration of the Chapter 11 Cases of the kind specified in sections 363, 364(c)(1), 365 or 503(b) of the Bankruptcy Code and entitled to priority pursuant to sections 507(a)(2) or 507(b) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estate and operating the businesses of the Debtors.

(7)      "**_Affiliate Debtors_**" means Auto Sales, General Trading, Frank Sawyer Corp., 100 Stuart Street, Oliver Street Corp., General Land Corp., and Arlington Street Trust.

(8)      "**_Allowed_**" means with respect to Claims: (a) any Claim that is listed in the Schedules (if Filed) as not contingent, not unliquidated, and not disputed and for which no contrary assertion has been filed; (b) a Claim (or a portion thereof) as to which (i) (A) no objection or request for estimation has been filed and (B) the time for filing objections has passed, or (ii) as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective holder of such Claim; or (c) any Claim (or portion thereof) that is allowed, (w) pursuant to this Plan, (x) by Final Order, or (y) in any contract, instrument, indenture or other agreement entered into in connection with the Plan, or (z) with respect to an Administrative Expense Claim only (1) that was incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases to the extent due and owing without defense, offset, recoupment or counterclaim of any kind, and (2) that is not otherwise disputed; provided, however, that with respect to any Claim described in clause (a) above, such Claim shall be considered Allowed only if and to the extent that with respect to any Claim no objection to the allowance thereof has been interposed within the applicable period of time fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court.  Any Claim that has been or is hereafter listed in the Schedules (if Filed) as contingent, unliquidated or disputed, and for which the Holder of such Claim has not advised the Debtors in writing of its belief to the contrary, is not considered Allowed.

(9)      "**_Allowed  [_____]  Claims_**" means an Allowed Claim in the Specified Class.

(10)      "**_Arlington Street Trust_**" means 131 Arlington Street Trust, a Debtor in these Chapter 11 Cases.

(11)      "**_Auto Sales_**" means Auto Sales & Service, Inc., a Debtor in these Chapter 11 Cases.

(12)      "**_Ballots_**" means the ballots accompanying the Disclosure Statement upon which certain Holders of Impaired Claims and Interests entitled to vote shall, among other things, indicate their acceptance or rejection of this Plan in accordance with this Plan and the procedures governing the solicitation process.

2

(13)    "**Bankruptcy Code**" means title 11 of the United States Code, as now in effect or hereafter amended.

(14)    "**Bankruptcy Court**" means the United States Bankruptcy Court for the District of Massachusetts having jurisdiction over the Chapter 11 Cases.

(15)    "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Cases, promulgated by the United States Supreme Court under section 2075 of the Judicial Code, as amended from time to time.

(16)    "**Bar Date**" means November 1, 2010, the deadline established by the Court for the filing of proofs of claim and for the filing of requests for payment of Administrative Claims pursuant to that certain *Order Granting Motion by Debtors and Debtors-in-Possession for Entry of an Order Fixing Bar Date and Approving Form of Notice,* dated September 17, 2010.

(17)    "**Books and Records**" means, collectively, the books and records of the Debtors.

(18)    "**Bovis**" means Bovis Land Lease LMB, Inc., the construction manager for the construction of the W Hotel and Residences.

(19)    "**Business Day**" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

(20)    "**Cash**" means the legal tender of the United States of America or the equivalent thereof.

(21)    "**Causes of Action**" means any claim, cause of action, controversy, demand, agreement, right (including to legal or equitable remedies), action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law.    Cause of Action also includes: (a) any right of setoff, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; (e) any state law fraudulent transfer claim; and (f) any claim listed in the Plan Supplement.

(22)    "**Certificate**" means any instrument evidencing a Claim or an Interest.

3

(23)    "*Chapter 11 Cases*" means, collectively, the following Chapter 11 Cases, which are being jointly administered, pending for each of the following Debtors under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court:

| Debtors | Case Number |
|---|---|
| SW Boston | 10-14535 (JNF) |
| Auto Sales | 10-14528 (JNF) |
| General Trading | 10-14532 (JNF) |
| Frank Sawyer Corp. | 10-14533 (JNF) |
| 100 Stuart Street | 10-14534 (JNF) |
| Oliver Street Corp. | 10-16173 (JNF) |
| General Land Corp. | 10-16174 (JNF) |
| Arlington Street Trust | 10-16177 (JNF) |

(24)    "*City*" means the City of Boston, a Municipal Corporation in the Commonwealth of Massachusetts, acting by and through its Public Facilities Commission by the Director of the Department of Neighborhood Development.

(25)    "*City Account*" means the bank account at Boston Private Bank and Trust Company, with a balance of approximately $4,000,000, which account is subject to a Lien in favor of the City pursuant to the City Loan Documents.

(26)    "*City Claims*" means a Claim arising under or related to the City Loan Documents.

(27)    "*City Collateral*" shall mean all of the Debtors' real and personal property against which the City had a properly perfected, valid Lien as of the Petition Date.

(28)    "*City Loan Documents*" means the note, loan agreement, mortgages and other documents executed by certain of the Debtors prior to the Petition Date in conjunction with the loan from the City to SW Boston.

(29)    "*Claim*" means any claim against the Debtors as defined in section 101(5) of the Bankruptcy Code.

(30)    "*Class*" means a category of Holders of Claims or Interests as designated in Article III hereof pursuant to section 1122(a) of the Bankruptcy Code.

(31)    "*Committee*" means the official committee of unsecured creditors appointed in the Chapter 11 Cases by the Office of the United States Trustee for the District of Massachusetts.

(32)    "*Confirmation*" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases, subject to all conditions specified in Article 11 hereof having been (a) satisfied, or (b) waived pursuant to Article 11 hereof.

4

(33)    "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

(34)    "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court on confirmation of this Plan pursuant to section 1129 of the Bankruptcy Code, as such hearing may be continued from time to time.

(35)    "*Confirmation Order*" means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

(36)    "*Consummation*" means the occurrence of the Effective Date.

(37)    "*Creditor*" means the holder of a Claim.

(38)    "*Cure Claim*" means a Claim based upon the Debtors' monetary defaults, if any, under an Executory Contract or Unexpired Lease at the time such contract or lease is assumed by the Debtors pursuant to sections 365 or 1123 of the Bankruptcy Code.

(39)    "*Current Officer*" means an officer of any Debtor on or immediately prior to the Effective Date.

(40)    "*D&O Liability Insurance Policies*" means all insurance policies for directors', managers', and officers' liability maintained by the Debtors as of the Petition Date.

(41)    "*Debtors*" means SW Boston, Auto Sales, General Trading, Frank Sawyer Corp., 100 Stuart Street, Oliver Street Corp., General Land Corp., and Arlington Street Trust.

(42)    "*Debtor Release*" means the release provision set forth in Section 10.3 hereof.

(43)    "*Debtor Releasee*" means, collectively, (a) Prudential and its current and former officers, directors, managers, employees, subsidiaries, affiliates, successors and assigns; and (b) Prudential's attorneys, financial advisors, advisors, accountants, investment bankers, investment advisors, actuaries, and professionals, and its respective predecessors and successors in interest, and all of its current and former members (including *ex officio* members), officers, directors, employees, partners, attorneys, financial advisors, accountants, managed funds, investment bankers, investment advisors, actuaries, professionals and affiliates, each in their respective capacities as such.

(44)    "*Debtors in Possession*" means the Debtors, as Debtors in possession in the Chapter 11 Cases, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

(45)    "*Disallowed*", when used with respect to a Claim, means that the Claim or applicable portion thereof has been determined by a Final Order or pursuant to this Plan to be invalid.

5

(46)    "*Disbursing Agent*" means the Debtors or Reorganized SW Boston, or the Entity or Entities chosen by the Debtors or Reorganized SW Boston to make or facilitate distributions pursuant to this Plan.

(47)    "*Disclosure Statement*" means the disclosure statement relating to this Plan, including, without limitation, all exhibits and schedules thereto, as approved, conditionally or otherwise, by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

(48)    "*Disputed*" means, with respect to any Claim or Interest, any Claim or Interest that is not yet Allowed.

(49)    "*Disputed Claims Reserve*" means a Cash reserve which shall be maintained by Reorganized SW Boston in an interest-bearing account, in the estimated amount necessary to pay all Disputed Claims if such Disputed Claims become Allowed Claims.

(50)    "*Distribution Address*" means the address set forth (i) on the Schedules filed with the Bankruptcy Court, (ii) on the books records of the Debtors or their agents, or (iii) in a letter of transmittal by holders of an Allowed Claim or Equity Interest, unless the Debtors have been notified in writing of a change of address, including, without limitation, by the filing of a Proof of Claim by such holder that contains an address for such holder different from the address reflected on the foregoing listed documents.

(51)    "*Distribution Record Date*" means, except with respect to any publicly traded securities that are canceled by the Plan, with respect to all Classes, the third Business Day after the date the Confirmation Order is entered by the Bankruptcy Court or such other date as shall be designated by the Bankruptcy Court in the Confirmation Order.

(52)    "*Distribution*" means a payment of Cash required under this Plan to be distributed to the holders of Allowed Claims.

(53)    "*Effective Date*" means the first Business Day after which the conditions precedent specified in this Plan (including, but not limited to, in Article 11.2 hereof) have been satisfied or waived, and upon which no stay of the Confirmation Order is in effect.

(54)    "*Entity*" means an entity as defined in section 101(15) of the Bankruptcy Code.

(55)    "*Equity Interest*" or "*Interest*" means any ownership or equity interest in the Debtors, including, without limitation, any issued, unissued, authorized or outstanding shares of common or preferred stock or any other equity security of the Debtors, together with any warrants, options or contractual rights to purchase or acquire such interests at any time and all rights arising with respect thereto, and any and all interests in the foregoing that was in existence immediately prior to or on the Petition Date.

(56)    "*Estate*" means the estate created for each respective Debtors in the related Chapter 11 Cases pursuant to section 541 of the Bankruptcy Code.

6

(57)    "*Executory Contract*" means a contract to which any of the Debtors is a party that is capable of assumption or rejection under section 365 of the Bankruptcy Code.

(58)    "*Fee Claim*" means a Claim for Accrued Professional Compensation.

(59)    "*File*," "*Filed*," or "*Filing*" means file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

(60)    "*Final Order*" means, as applicable, an order, ruling or judgment of the Bankruptcy Court (or other court of competent jurisdiction with respect to the relevant subject matter) that has been entered by the Clerk of the Bankruptcy Court on the docket in the Chapter 11 Cases (or by the clerk of such other court of competent jurisdiction on the docket of such court), which is in full force and effect, has not been reversed, stayed, modified, or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be Filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought; provided, however, that the possibility that a motion under Rule 50 or 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Federal Rules of Civil Procedure or Bankruptcy Rules, may be filed relating to such order, ruling or judgment shall not cause such order, ruling or judgment not to be a Final Order.

(61)    "*Frank Sawyer Corp.*" means Frank Sawyer Corporation, a Debtor in these Chapter 11 Cases.

(62)    "*FSC Guaranty Documents*" means, collectively, the following documents:

(i)    Payment Guaranty issued by Frank Sawyer Corporation in favor of Prudential, dated January 15, 2008;

(ii)    Carveout Guaranty issued by Frank Sawyer Corporation in favor of Prudential, dated January 15, 2008;

(iii)    Completion Guaranty issued by Frank Sawyer Corporation in favor of Prudential, dated January 15, 2008.

(63)    "*FSC Guaranty Obligations*" means any obligation of Frank Sawyer Corp. under or related to the FSC Guaranty Documents.

(64)    "*General Land Corp.*" means General Land Corporation, a Debtor in these Chapter 11 Cases.

(65)    "*General Unsecured Claim*" means any unsecured Claim against the Debtors that is not: (a) a Prudential Loan Claim; (b) a Prudential Guaranty Claim, (c) an Other Secured Claim; (d) an Administrative Claim; (e) a Priority Tax Claim; (f) an Other Priority Claim; or (g) a Insider and Affiliate Debtor Unsecured Claim, and shall not include Claims that are disallowed or released, whether by operation of law or pursuant to order of the Bankruptcy Court, written release or settlement, the provisions of this Plan or otherwise.

7

(66)    "*General Trading*" means General Trading Company, a Debtor in these Chapter 11 Cases.

(67)    "*Governmental Unit*" means a governmental unit as defined in section 101(27) of the Bankruptcy Code.

(68)    "*Guarantors*" means individually or collectively, Frank Sawyer Corp., Oliver Street Corp., Auto Sales, General Trading, 131 Arlington Trust, Stuart Street, and General Land.

(69)    "*Holder*" means any Entity holding a Claim or an Interest.

(70)    "*Impaired Class*" means an impaired Class within the meaning of section 1124 of the Bankruptcy Code.

(71)    "*Indemnification Provision*" means the Debtors' indemnification provisions currently in place whether in the bylaws, certificates of incorporation, other formation documents, board resolutions, employment contracts or indemnification agreements for the current and former directors, officers, managers, employees, attorneys, other professionals and agents of the Debtors and such current and former directors', officers', and managers' respective Affiliates.

(72)    "*Insider*" shall have the meaning set forth in Section 101(31) of the Bankruptcy Code, provided that it shall not include any Debtor.

(73)    "*Insider and Affiliate Debtor Unsecured Claim*" means any unsecured Claim against a Debtor held or acquired by an Insider or non-Debtor Affiliate of such Debtor.

(74)    "*Intercompany Contracts*" means any Executory Contract, Unexpired Lease, or any other agreement, contract, or lease to which the parties are the Debtors and one or more Affiliates of the Debtors.

(75)    "*Interim Compensation Order*" means an order of the Bankruptcy Court allowing Professionals to seek interim compensation in accordance with the procedures approved therein, or as the same may be modified by a Bankruptcy Court order approving the retention of a specific Professional or otherwise.

(76)    "*Investment Accounts*" means the accounts held by certain of the Debtors at UBS Financial Services, Inc., as of the Petition Date.

(77)    "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1-4001.

(78)    "*Letter of Credit Draw*" means the draw by Prudential, on or about April 30, 2010, on a letter of credit in the amount of $17.3 million that had been posted by SE Berkeley Street, LLC and SE McClellan Highway, LLC, affiliates of the Debtors, in furtherance of construction of the W Hotel and Residences.

8

(79)    "*Lien*" means a lien as defined in section 101(37) of the Bankruptcy Code.

(80)    "*Mechanics Lien Claims*" means the Allowed Claims secured by valid and perfected mechanics Liens in accordance with M.G.L. c. 254, as amended.

(81)    "*New Prudential Loan Documents*" means the New Prudential Note and all related security and financing agreements evidencing the indebtedness of Reorganized SW Boston to Prudential.

(82)    "*New Prudential Note*" means the promissory note issued by Reorganized SW Boston in favor of Prudential on the terms and subject to the conditions set forth in Article 5 of the Plan.

(83)    "*New SW Boston Interests*" means the newly issued membership interests in Reorganized SW Boston, as issued by Reorganized SW Boston pursuant to the Plan.

(84)    "*Oliver Street Corp.*" means 30-32 Oliver Street Corporation, a Debtor in the Chapter 11 Cases.

(85)    "*Other Priority Claim*" means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than an Administrative Claim or Priority Tax Claim.

(86)    "*Other Secured Claim*" means any Secured Claim that is not a Prudential Loan Claim or City Claim.

(87)    "*Person*" means a "person" as defined in section 101(41) of the Bankruptcy Code.

(88)    "*Petition Date*" means (a) for SW Boston, Auto Sales, General Trading, Frank Sawyer Corp. and 100 Stuart Street, April 28, 2010, or (b) for General Land, Oliver Street and Arlington Street Trust, June 4, 2010.

(89)    "*Plan*" means this Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code, as amended, supplemented, or modified from time to time in accordance with the provisions of the Bankruptcy Code, the terms hereof or thereof, and any other exhibits, supplements, appendices and schedules hereto.

(90)    "*Plan Documents*" means the documents, other than this Plan, to be executed, delivered, assumed, complied with and/or performed in connection with the consummation of this Plan, including, without limitation, the documents to be included in the Plan Supplement, and any and all exhibits, supplements, appendices and schedules to this Plan.

(91)    "*Plan Objection Deadline*" means the date established by the Bankruptcy Court by which an Entity must object to this Plan or be forever barred from asserting an objection to this Plan.

(92)    "*Plan Obligations*" means, collectively for all Debtors, the aggregate amount of the cash payments that are to be made pursuant to the Plan to the holders of Allowed Claims.

(93)    "*Plan Sponsor*" means Prudential.

(94)    "*Plan Supplement*" means the compilation of documents and forms of documents, schedules, and exhibits to this Plan, to be Filed at the sole discretion of Prudential prior to the Confirmation Hearing, as amended, supplemented, or modified from time to time in accordance with the terms hereof and the Bankruptcy Code and the Bankruptcy Rules, including, to the extent known, the identity of the members of the board of directors of each Debtor.

(95)    "*Post Effective-Date Liquidating Entity*" means an entity designated by,  or incorporated or formed by, Prudential prior to the Effective Date, which entity shall liquidate the Estates of the Affiliate Debtors after the Effective Date.

(96)    "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

(97)    "*Pro Rata*" means the proportion that an Allowed Claim or an Allowed Interest, as applicable, in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests, as applicable, in that Class, or the proportion that Allowed Claims or Allowed Interests, as applicable, in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim or Allowed Interest, as applicable, under this Plan.

(98)    "*Professional*" means an Entity: (a) retained pursuant to a Final Order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, 331 and 363 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

(99)    "*Proof of Claim*" means a proof of Claim Filed against the Debtors in the Chapter 11 Cases.

(100)    "*Prudential*" has the meaning set forth in the preamble to the Plan.

(101)    "*Prudential Cash Contribution*" means the Cash contribution to be funded by Prudential in an amount necessary to fund the Plan Obligations as they become due.

(102)    "*Prudential Collateral*" means all of the Debtors' real and personal property against which Prudential held a properly perfected, valid Lien as of the Petition Date.

(103)    "*Prudential Debt Contribution*" means the portion of the Allowed Prudential Loan Claim in the notional amount of Twenty Million Dollars ($20,000,000) that shall be contributed to Reorganized SW Boston in consideration for 100% of the outstanding Equity Interests in Reorganized SW Boston.

10

(104)   "*Prudential Guaranty Claims*" means a Claim arising under or related to any of (i) the FSC Guaranty Documents, or (ii) the Additional Guaranty Documents, which Claims are secured by Liens on the Additional Prudential Collateral.

(105)   "*Prudential Loan Claim*" means a Claim arising under or related to the Prudential Loan Documents.  The Prudential Loan Claim shall include post-petition interest, as provided for under the Prudential Loan Documents, from the Petition Date through and including the Confirmation Date.  The Prudential Loan Claim shall be reduced by (i) the Letter of Credit Draw, (ii) payments received by Prudential from the proceeds of the sale of the Residences and the Hotel, and (iii) the Prudential Debt Contribution.

(106)   "*Prudential Loan Documents*" means (i) that certain Construction Loan Agreement, dated January 15, 2008, by and between SW Boston, as borrower, Prudential, as lender, and the other parties thereto, and (ii) all other documents evidencing or relating to the Debtors' respective obligations to Prudential and all documents evidencing or relating to any Liens on the Prudential Collateral.

(107)   "*Rejection Claim*" means a Claim based on the rejection by the Debtors of an Executory Contract or an Unexpired Lease pursuant to the Plan or otherwise.

(108)   "*Releasing Parties*" means, collectively: (a) the Debtor Releasees (b) the Third Party Releasees, (c) all Holders of Claims or Interests, except for Holders of any Claims or Interests who vote to reject this Plan; and (d) the Creditors' Committee and its members in their capacity as such.

(109)   "*Reorganized [Debtors Name]*" means, with respect to the specified Debtor, the reorganized Debtor or any successor thereto, by merger, consolidation or otherwise, on or after the Effective Date, after giving effect to the restructuring transactions occurring on the Effective Date in accordance with this Plan.

(110)   "*Restaurant*" means the restaurant and lobby bar at the W Hotel and Residences.

(111)   "*Retail Store*" means the retail store located in the W Hotel and Residences.

(112)   "*Schedule of Rejected Contracts*" means a schedule of the contracts and leases that the Debtors may (but shall not be required to) include with the Plan Supplement listing contracts and leases to be rejected pursuant to section 365 of the Bankruptcy Code and the terms of this Plan, as such schedule may be amended from time to time on or before the Effective Date.

(113)   "*Schedules*" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified, or supplemented from time to time.

(114)   "*SE Berkeley*" means SE Berkeley Street, LLC, an Insider.

(115)   "*SE McClellan*" means SE McClellan Highway, LLC, an Insider.

(116)   "*Secured Claim*" means a Claim: (a) secured by a Lien on property in which the Estate has an interest as of the Confirmation Date, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to sections 506(a) or 111(b) of the Bankruptcy Code; or (b) otherwise Allowed pursuant to this Plan as a Secured Claim.

(117)   "*Senior*" means (a) with respect to an Allowed Claim, any other Allowed Claim that is entitled to a priority of distribution under the Bankruptcy Code over the subject Allowed Claim, and (b) with respect to a Lien, any other Lien on the same Collateral that is entitled to precedence over the subject Lien with respect to such Collateral.

(118)   "*SW Boston*" means SW Boston Hotel Venture LLC, a Debtor in these Chapter 11 Cases.

(119)   "*U.S. Trustee Fees*" means all fees and charges assessed against the Estates by the United States Trustee and due pursuant to 11 U.S.C. § 1930.

(120)   "*Unexpired Lease*" means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

(121)   "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Claim or an Interest that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

(122)   "*Voting Deadline*" means 11:59 p.m. (prevailing Eastern Time) on [_____], 2011, unless extended or earlier terminated by Prudential.

(123)      "*W Residences*" means the 123 residential units in The 100 Stuart Street Primary Condominium, a condominium located at 100 Stuart Street, Boston, Massachusetts, created by a master deed and bylaws dated December 10, 2009, and recorded with the Suffolk County, Massachusetts Registry of Deeds, 81 of which units are owned by SW Boston as of June 24, 2011.

**1.2**   **Rules of Interpretation**.  For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit, as it may thereafter be amended, modified, or supplemented; (d) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (e) unless otherwise stated, the words "herein," "hereof," and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (f) captions and headings to Articles are inserted for convenience of reference only and are not

12

intended to be a part of or to affect the interpretation hereof; (g) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (i) unless otherwise specified, all section or exhibit references in this Plan are to the respective section in, or exhibit to, this Plan; (j) any reference to an entity as a holder of a Claim or Interest includes that entity's successors and assigns; and (k) subject to the provisions of any contract, certificates or articles of incorporation, bylaws, instruments, releases, or other agreements or documents entered into or amended in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules and any applicable non-bankruptcy law.

     **1.3**    **Appendices and Plan Documents**.  All Plan Documents and appendices to the Plan are incorporated into the Plan by this reference and are a part of the Plan as if set forth in full herein.  Forms of all Plan Documents shall be filed with the Bankruptcy Court not less than five (5) days prior to the commencement of the Confirmation Hearing.  Holders of Claims and Interests may obtain a copy of the Plan Documents, once filed, by a written request sent via mail or electronic mail to the following address:

> Goodwin Procter LLP
> The New York Times Building
> 620 Eighth Avenue
> New York, New York 10018
> Attn:   Emanuel C. Grillo (egrillo@goodwinprocter.com)
>        Matthew L. Curro (mcurro@goodwinprocter.com)

# ARTICLE 2
## PROVISIONS FOR THE ALLOWANCE AND PAYMENT OF UNCLASSIFIED CLAIMS:  ADMINISTRATIVE AND PRIORITY TAX CLAIMS

     **2.1**    **Administrative Claims**.  Subject to the provisions of sections 328, 330(a), and 331 of the Bankruptcy Code, if applicable, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Administrative Claim, each Holder of such Allowed Administrative Claim shall be paid in full in Cash, or be paid otherwise in the ordinary course of business, the unpaid portion of such Allowed Administrative Claim or otherwise receive such treatment as to render such Holder Unimpaired.

          (1)    Reorganized SW Boston shall make payments to Holders of Allowed Administrative Claims on behalf of such Claims (except to the extent that a holder of an Allowed Administrative Claim agrees to a different treatment) on, or as soon thereafter as is reasonably practicable, the later of the Effective Date and the first Business Day after the date that is thirty (30) calendar days after the date an Administrative Claim becomes an Allowed Claim; provided, however, that Allowed Administrative Claims representing liabilities incurred in the ordinary course of business by the Debtors, as Debtors in possession, shall be paid by the Debtors or Reorganized SW Boston, as applicable, in the ordinary course of business, consistent with past

LIBNY/5004629.10

practice and in accordance with the terms and subject to the conditions of any orders or agreements, governing instruments evidencing, or other documents relating to, such liabilities.

(2)    Professionals or other Entities asserting a Fee Claim for services rendered before the Effective Date must File and serve on Reorganized SW Boston and such other Entities that are designated by the Bankruptcy Rules, the Confirmation Order, or such other order of the Bankruptcy Court an application for final allowance of such Fee Claim no later than forty-five (45) days after the Effective Date. Objections to any Fee Claim must be Filed and served on Reorganized SW Boston and the requesting party by the later of (x) forty-five (45) days after the Effective Date and (y) twenty (20) days after the Filing of the applicable request for payment of the Fee Claim. To the extent necessary, this Plan and the Confirmation Order shall amend and supersede any previously entered order regarding the payment of Fee Claims.

(3)    Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and Reorganized SW Boston may employ and pay any Professional for services rendered or expenses incurred after the Effective Date in the ordinary course of business without any further notice to any party or action, order, or approval of the Bankruptcy Court.

(4)    *U.S. Trustee Fees*. Quarterly fees owed to the Office of the U.S. Trustee shall be paid when due in accordance with applicable law and Reorganized SW Boston shall continue to file reports to show the calculation of such fees for the Estates until the Chapter 11 Cases are closed under Section 350 of the Bankruptcy Code.

**2.2    Priority Tax Claims**. Except to the extent the Holder of an Allowed Priority Tax Claim agrees otherwise, each Holder of an Allowed Priority Tax Claim will be paid, at the sole option of the Debtors, in respect of such Allowed Priority Tax Claim either (a) the full amount thereof, without post-petition interest or penalty, in Cash, as soon as practicable after the later of (i) the Effective Date and (ii) the date of which such Claim becomes an Allowed Claim or (b) Cash payments made in equal annual installments beginning on or before the first anniversary following the Effective Date with the final installment being payable no later than the fifth anniversary of the Petition Date of such Allowed Priority Tax Claim or (c) such lesser amount as the Holder of an Allowed Priority Tax Claim and the Debtors or Reorganized SW Boston otherwise agree.

## ARTICLE 3
## CLASSIFICATION OF CLAIMS AND INTERESTS

**3.1    Summary of Classification; Class Identification**. All Claims and Interests, other than Administrative Claims and Priority Tax Claims, except where noted, are classified in the Classes set forth in this Article III for all purposes, including voting, Confirmation, and distributions pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim or Interest is also classified in a particular Class for the purpose of receiving

14

distributions pursuant to this Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

(1)     Class Identification.  The classification of Claims and Interests against the Debtors pursuant to this Plan is as follows:

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|
| 1 | Other Priority Claims | Unimpaired | Deemed to Accept |
| 1-A | Other Priority Claims against Arlington Street Trust | Unimpaired | Deemed to Accept |
| 1-B | Other Priority Claims against Auto Sales | Unimpaired | Deemed to Accept |
| 1-C | Other Priority Claims against Frank Sawyer Corp. | Unimpaired | Deemed to Accept |
| 1-D | Other Priority Claims against General Land Corp. | Unimpaired | Deemed to Accept |
| 1-E | Other Priority Claims against General Trading | Unimpaired | Deemed to Accept |
| 1-F | Other Priority Claims against Oliver Street Corp. | Unimpaired | Deemed to Accept |
| 1-G | Other Priority Claims against Stuart Street | Unimpaired | Deemed to Accept |
| 1-H | Other Priority Claims against SW Boston | Unimpaired | Deemed to Accept |
| 2 | Prudential Loan Claims | Impaired | Entitled to Vote |
| 2-H | Prudential Loan Claims against SW Boston | Impaired | Entitled to Vote |
| 3 | Prudential Guaranty Claims | -- | -- |
| 3-A | Prudential Guaranty Claims against Arlington Street Trust | Impaired | Entitled to Vote |
| 3-B | Prudential Guaranty Claims against Auto Sales | Impaired | Entitled to Vote |
| 3-C | Prudential Guaranty Claims against Frank Sawyer Corp. | Impaired | Entitled to Vote |
| 3-D | Prudential Guaranty Claims against General Land Corp. | Impaired | Entitled to Vote |
| 3-E | Prudential Guaranty Claims against General Trading | Impaired | Entitled to Vote |

15

| Class | Claim | Status | Voting Rights |
|---|---|---|---|
| 3-F | Prudential Guaranty Claims against Oliver Street Corp. | Impaired | Entitled to Vote |
| 3-G | Prudential Guaranty Claims against Stuart Street | Impaired | Entitled to Vote |
| 4 | City Claims | -- | -- |
| 4-A | City Claims against Arlington Street Trust | Unimpaired | Deemed to Accept |
| 4-C | City Claims against Frank Sawyer Corp. | Unimpaired | Deemed to Accept |
| 4-D | City Claims against General Land Corp. | Unimpaired | Deemed to Accept |
| 4-F | City Claims against Oliver Street Corp. | Unimpaired | Deemed to Accept |
| 4-H | City Claims against SW Boston | Unimpaired | Deemed to Accept |
| 5 | Other Secured Claims | -- | -- |
| 5-A | Other Secured Claims against Arlington Street Trust | Unimpaired | Deemed to Accept |
| 5-B | Other Secured Claims against Auto Sales | Unimpaired | Deemed to Accept |
| 5-C | Other Secured Claims against Frank Sawyer Corp. | Unimpaired | Deemed to Accept |
| 5-D | Other Secured Claims against General Land Corp. | Unimpaired | Deemed to Accept |
| 5-E | Other Secured Claims against General Trading | Unimpaired | Deemed to Accept |
| 5-F | Other Secured Claims against Oliver Street Corp. | Unimpaired | Deemed to Accept |
| 5-G | Other Secured Claims against Stuart Street | Unimpaired | Deemed to Accept |
| 5-H | Other Secured Claims against SW Boston | Unimpaired | Deemed to Accept |
| 6 | General Unsecured Claims | -- | -- |
| 6-A | General Unsecured Claims against Arlington Street Trust | Impaired | Entitled to Vote |
| 6-B | General Unsecured Claims against Auto Sales | Impaired | Entitled to Vote |

16

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|
| 6-C | General Unsecured Claims against Frank Sawyer Corp. | Impaired | Entitled to Vote |
| 6-D | General Unsecured Claims against General Land Corp. | Impaired | Entitled to Vote |
| 6-E | General Unsecured Claims against General Trading | Impaired | Entitled to Vote |
| 6-F | General Unsecured Claims against Oliver Street Corp. | Impaired | Entitled to Vote |
| 6-G | General Unsecured Claims against Stuart Street | Impaired | Entitled to Vote |
| 6-H | General Unsecured Claims against SW Boston | Impaired | Entitled to Vote |
| 7 | Insider and Affiliate Debtor Unsecured Claims | | |
| 7-A | Insider and Affiliate Debtor Unsecured Claims against Arlington Street Trust | Impaired | Deemed to Reject |
| 7-B | Insider and Affiliate Debtor Unsecured Claims against Auto Sales | Impaired | Deemed to Reject |
| 7-C | Insider and Affiliate Debtor Unsecured Claims against Frank Sawyer Corp. | Impaired | Deemed to Reject |
| 7-D | Insider and Affiliate Debtor Unsecured Claims against General Land Corp. | Impaired | Deemed to Reject |
| 7-E | Insider and Affiliate Debtor Unsecured Claims against General Trading | Impaired | Deemed to Reject |
| 7-F | Insider and Affiliate Debtor Unsecured Claims against Oliver Street Corp. | Impaired | Deemed to Reject |
| 7-G | Insider and Affiliate Debtor Unsecured Claims against Stuart Street | Impaired | Deemed to Reject |
| 7-H | Insider and Affiliate Debtor Unsecured Claims against SW Boston | Impaired | Deemed to Reject |
| 8 | Interests in the Debtors | -- | -- |

17

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|
| 8-A | Interests in Arlington Street Trust | Impaired | Deemed to Reject |
| 8-B | Interests in Auto Sales | Impaired | Deemed to Reject |
| 8-C | Interests in Frank Sawyer Corp. | Impaired | Deemed to Reject |
| 8-D | Interests in General Land Corp. | Impaired | Deemed to Reject |
| 8-E | Interests in General Trading | Impaired | Deemed to Reject |
| 8-F | Interests in Oliver Street Corp. | Impaired | Deemed to Reject |
| 8-G | Interests in Stuart Street | Impaired | Deemed to Reject |
| 8-H | Interests in SW Boston | Impaired | Deemed to Reject |

(2)     Separate Classification of Subclasses.  Each separate sub-Class identified above shall be treated as being in a separate Class for all purposes under the Plan, including for the purpose of receiving distributions under the Plan.

(3)     Separate Classification of Other Secured Claims. Although all Other Secured Claims have been placed in one Class for purposes of nomenclature, each Other Secured Claim, to the extent secured by a Lien on collateral different than that securing any other Other Secured Claims, shall be treated as being in a separate sub-Class for the purpose of receiving distributions under the Plan.

## ARTICLE 4
## PROVISIONS FOR TREATMENT OF
## CLASSIFIED CLAIMS AND EQUITY INTERESTS

**4.1     Class 1:  Allowed Other Priority Claims.**

(1)     Classification:

(i)     Class 1-A consists of all Other Priority Claims against Arlington Street Trust.

(ii)     Class 1-B consists of all Other Priority Claims against Auto Sales.

(iii)     Class 1- C consists of all Other Priority Claims against Frank Sawyer Corp.

(iv)     Class 1-D consists of all Other Priority Claims against General Land Corp.

(v)     Class 1-E consists of all Other Priority Claims against General Trading.

(vi)     Class 1-F consists of all Other Priority Claims against Oliver Street Corp.

18

(vii)    Class 1-G consists of all Other Priority Claims against Stuart Street.

(viii)    Class 1-H consists of all Other Priority Claims against SW Boston.

(2)    Treatment: Except to the extent that a Holder of an Allowed Other Priority Claim agrees to a less favorable treatment for such Holder, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Other Priority Claim, each Holder of such Allowed Other Priority Claim shall be paid in full in Cash on the later of the Effective Date and the date on which such Other Priority Claim becomes an Allowed Other Priority Claim, or as soon as reasonably practicable thereafter.

(3)    Voting: Class 1 is Unimpaired, and Holders of Class 1 Other Priority Claims are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class 1 Other Priority Claims are not entitled to vote to accept or reject this Plan.

**4.2    Class 2:  Prudential Loan Claims**.

(1)    Classification:  Class 2-H consists of all Prudential Loan Claims against SW Boston.

(2)    Treatment:  In full and final satisfaction, settlement, release and discharge of the Allowed Prudential Loan Claims, Prudential, as the holder of the Allowed Prudential Loan Claims, shall receive:

(i)    the New Prudential Note; and

(ii)    100% of the New SW Boston Interests; and

(3)    Prudential Liens.  Prudential's Liens on the Prudential Collateral shall remain validly perfected, first priority Liens on such Collateral until the payment in full of the New Prudential Note.

(4)    Prudential Consideration.  In addition to the release of the Allowed Prudential Loan Claims, in consideration for the distributions and releases received pursuant to the Plan, Prudential shall contribute the Prudential Debt Contribution, which shall, upon the Effective Date, be converted into equity in Reorganized SW Boston.

(5)    Voting: Class 2 is Impaired, and Holders of Class 2 Prudential Loan Claims are entitled to vote to accept or reject this Plan.

**4.3    Class 3:  Prudential Guaranty Claims**.

(1)    Classification:

(i)    Class 3-A consists of all Prudential Guaranty Claims against Arlington Street Trust.

19

(ii)    Class 3-B consists of all Prudential Guaranty Claims against Auto Sales.

(iii)    Class 3- C consists of all Prudential Guaranty Claims against Frank Sawyer Corp.

(iv)    Class 3-D consists of all Prudential Guaranty Claims against General Land Corp.

(v)    Class 3-E consists of all Prudential Guaranty Claims against General Trading.

(vi)    Class 3-F consists of all Prudential Guaranty Claims against Oliver Street Corp.

(vii)    Class 3-G consists of all Prudential Guaranty Claims against Stuart Street.

(2)    <u>Treatment</u>:  Pursuant to Section 6.8, the Estates of the Affiliate Debtors shall be liquidated as soon as is commercially practicable by the Post Effective-Date Liquidating Entity.  In full and final satisfaction, settlement, release and discharge of the Allowed Prudential Guaranty Claims, Prudential, as the holder of the Allowed Prudential Guaranty Claims, shall receive 100% of the Equity Interests in the Reorganized Post-Effective Date Liquidating Entity. Cash realized from the liquidation of the Estates of the Affiliate Debtors shall be applied to the principal balance of the New Prudential Note.

(3)    <u>Voting</u>: Class 3 is Impaired, and Holders of Class 3 Prudential Guaranty Claims are entitled to vote to accept or reject this Plan.

**4.4    <u>Class 4:  City Claim</u>.**

(1)    <u>Classification</u>:

(i)    Class 4-A consists of all City Claims against Arlington Street Trust.

(ii)    Class 4- C consists of all City Claims against Frank Sawyer Corp.

(iii)    Class 4-D consists of all City Claims against General Land Corp.

(iv)    Class 4-F consists of all City Claims against Oliver Street Corp.

(v)    Class 4-H consists of all City Claims against SW Boston.

(2)    <u>Treatment</u>: In full and complete satisfaction, settlement, discharge and release of the City Claim, the holder of the Allowed City Claim shall receive the following treatment:

20

(i)    Loan Reinstatement:  On the Effective Date, the City Loan shall be reinstated in full so as to render the City unimpaired under the Plan and shall remain, to the extent not inconsistent with the Plan, subject to the terms and conditions of the City Loan Documents.

(ii)    Liens:  The Liens held by the holder of the Allowed City Claim shall be retained by such holder until the payment in full of the City Claim, in accordance with the City Loan Documents.  Upon the payment in full of the City Claim, the Liens on the City Collateral shall be discharged and released and the holder of the Allowed City Claim shall be required to deliver to Reorganized SW Boston, within one (1) Business Day of the payment in full of the Allowed City Claim, all UCC terminations, mortgage discharges and any other documents necessary to effect the discharge and release of the Liens on the City Collateral.

(3)    Voting: Class 4 is Unimpaired, and Holders of Class 4 City Claims are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class 4 City Claims are not entitled to vote to accept or reject this Plan.

**4.5    Class 5:  Other Secured Claims.**

(1)    Classification:

(i)    Class 5-A consists of all Other Secured Claims against Arlington Street Trust.

(ii)    Class 5-B consists of all Other Secured Claims against Auto Sales.

(iii)    Class 5- C consists of all Other Secured Claims against Frank Sawyer Corp.

(iv)    Class 5-D consists of all Other Secured Claims against General Land Corp.

(v)    Class 5-E consists of all Other Secured Claims against General Trading.

(vi)    Class 5-F consists of all Other Secured Claims against Oliver Street Corp.

(vii)    Class 5-G consists of all Other Secured Claims against Stuart Street.

(viii)    Class 5-H consists of all Other Secured Claims against SW Boston.

(2)    Treatment: Other Secured Claims shall be reinstated and rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.  Each holder of an Allowed Other Secured Claim shall retain the Liens securing its Allowed Other Secured Claim

21

as of the Effective Date until full and final payment of such Allowed Other Secured Claim is made as provided herein.  On the full payment or other satisfaction of such Claims in accordance with the Plan, the Liens securing such Allowed Other Secured Claim shall be deemed released, terminated and extinguished, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person.

(3)    Voting: Class 5 is Unimpaired, and Holders of Class 5 Other Secured Claims are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class 5 Other Secured Claims are not entitled to vote to accept or reject this Plan.

**4.6**    **Class 6:  General Unsecured Claims**.

(1)    Classification:

(i)    Class 6-A consists of all General Unsecured Claims against Arlington Street Trust.

(ii)    Class 6-B consists of all General Unsecured Claims against Auto Sales.

(iii)    Class 6- C consists of all General Unsecured Claims against Frank Sawyer Corp.

(iv)    Class 6-D consists of all General Unsecured Claims against General Land Corp.

(v)    Class 6-E consists of all General Unsecured Claims against General Trading.

(vi)    Class 6-F consists of all General Unsecured Claims against Oliver Street Corp.

(vii)    Class 6-G consists of all General Unsecured Claims against Stuart Street.

(viii)    Class 6-H consists of all General Unsecured Claims against SW Boston.

(2)    Treatment for Classes 6:  Except to the extent that a Holder of a General Unsecured Claim in Class 6 agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each such General Unsecured Claim, each Holder of an Allowed General Unsecured Claim in Class 6 shall be paid in full (excluding post-petition interest) in Cash on the Effective Date, or as soon as is practicable thereafter.

(3)    Voting:  Class 6 is Impaired.  Holders of Class 6 General Unsecured Claims are entitled to vote to accept or reject this Plan.

22

**4.7**    **Class 7:  Insider and Affiliate Debtor Unsecured Claims.**

    (1)    <u>Classification</u>:

        (i)    Class 7-A consists of all Insider and Affiliate Debtor Unsecured Claims against Arlington Street Trust.

        (ii)    Class 7-B consists of all Insider and Affiliate Debtor Unsecured Claims against Auto Sales.

        (iii)    Class 7- C consists of all Insider and Affiliate Debtor Unsecured Claims against Frank Sawyer Corp.

        (iv)    Class 7-D consists of all Insider and Affiliate Debtor Unsecured Claims against General Land Corp.

        (v)    Class 7-E consists of all Insider and Affiliate Debtor Unsecured Claims against General Trading.

        (vi)    Class 7-F consists of all Insider and Affiliate Debtor Unsecured Claims against Oliver Street Corp.

        (vii)    Class 7-G consists of all Insider and Affiliate Debtor Unsecured Claims against Stuart Street.

        (viii)    Class 7-H consists of all Insider and Affiliate Debtor Unsecured Claims against SW Boston.

    (2)    <u>Treatment</u>:  Holders of Insider and Affiliate Debtor Unsecured Claims shall receive no distribution under the Plan.  On the Effective Date, Non-Debtor Inisder and Affiliate Unsecured Claims shall be disallowed in full and deemed extinguished.

    (3)    <u>Voting</u>:  Class 7 is Impaired and Holders of Class 8 Insider and Affiliate Debtor Unsecured Claims are conclusively presumed to have rejected this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class 7 Insider and Affiliate Debtor Unsecured Claims are not entitled to vote to accept or reject this Plan.

**4.8**    **Class 8:  Interests in the Debtors**.

    (1)    <u>Classification</u>:

        (i)    Class 8-A consists of all Interests in Arlington Street Trust.

        (ii)    Class 8-B consists of all Interests in Auto Sales.

        (iii)    Class 8- C consists of all Interests in Frank Sawyer Corp.

        (iv)    Class 8-D consists of all Interests in General Land Corp.

LIBNY/5004629.10

(v)     Class 8-E consists of all Interests in General Trading.

(vi)    Class 8-F consists of all Interests in Oliver Street Corp.

(vii)   Class 8-G consists of all Interests in Stuart Street.

(viii)  Class 8-H consists of all Interests in SW Boston.

(2)     <u>Allowance</u>:  Interests in the Debtors shall be deemed to be Allowed Interests.

(3)     <u>Treatment</u>:  Holders of Interests in the Debtors shall receive no distribution under the Plan.  On the Effective Date, all Interests in the Debtors shall be deemed extinguished and the Certificates and all other documents representing such Interests shall be deemed cancelled and of no force and effect.

(4)     <u>Voting</u>:  Class 8 is Impaired.  Holders of Class 8 Interests are conclusively presumed to have rejected this Plan pursuant to Section 1126(f) of the Bankruptcy Coe.  Therefore, Holders of Class 8 Interests are not entitled to vote to accept or reject this Plan.

## ARTICLE 5
## NEW PRUDENTIAL NOTE

**5.1     Terms**.  The terms of the New Prudential Note and the New Prudential Loan Documents shall be governed by that certain Amended and Restated Construction Loan Agreement by and between Reorganized SW Boston, as borrower, Prudential, as lender, and the other parties thereto dated as of the Effective Date.

**5.2     Amount**.  The New Prudential Note shall be in the principal amount of the Allowed Prudential Loan Claim on the Effective Date.

## ARTICLE 6
## MEANS FOR IMPLEMENTATION OF THE PLAN

**6.1     Sources of Consideration for Plan Distributions**.  All consideration necessary for Reorganized SW Boston to make payments or distributions pursuant hereto on account of Claims against and Interests in the Debtors, unless otherwise stated herein, shall be funded from (i) Cash from the Debtors, including Cash from operations, (ii) to the extent necessary to satisfy in full the Plan Obligations, the Prudential Cash Contribution and (iii) the liquidation of the Estates of the Affiliated Debtors by the Post Effective-Date Liquidating Entity.

**6.2     Resignation of Current Officers and Directors.**  Upon the Effective Date, each Current Officer and Current Board Member shall resign, or shall be deemed to have resigned, their positions as officers and/or directors of the Debtors, as applicable.

**6.3     Section 1145 Exemption**.  Pursuant to section 1145 of the Bankruptcy Code, the offering, issuance, and distribution of any securities contemplated by this Plan, including without limitation the New SW Boston Interests, and all agreements incorporated herein shall be exempt

24

from, among other things, the registration requirements of section 5 of the Securities Act and any other applicable law requiring registration prior to the offering, issuance, distribution, or sale of securities.

**6.4     Corporate Existence**.  Except as otherwise provided herein, Reorganized SW Boston shall continue to exist after the Effective Date as separate corporate entities, with all the powers of a corporation, limited liability company or limited partnership, as applicable, pursuant to the applicable law in the jurisdiction in which Reorganized SW Boston is incorporated and pursuant to the respective operating agreements, trust agreements, articles of incorporation, bylaws and other documents amended by this Plan, which documents require no further action or approval.

**6.5     Cancellation of Existing Equity Interests in Affiliate Debtors**.  Except as otherwise set forth herein, on the Effective Date all agreements, Instruments, and other documents evidencing any equity Interest in the Affiliate Debtors, and any right of any Holder in respect thereof including any Claim related thereto, shall be deemed cancelled, discharged and of no force or effect.

**6.6     Issuance of New Membership Interests / Common Stock**.  On the Effective Date, Reorganized SW Boston shall issue the New SW Boston Interests for distribution to the Holder of the Prudential Loan Claim in accordance with Article 4.2.

The New SW Boston Interests issued and distributed pursuant to the Plan shall be duly authorized, validly issued and fully paid and non-assessable. Each distribution and issuance referred to in Article 6 hereof shall be governed by the terms and conditions set forth herein applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

**6.7     Vesting of Assets in the Post-Effective Date Liquidating Entity**.  Unless otherwise dealt with under this Plan, the property of the Estates of the Affiliate Debtors shall vest in the Post Effective-Date Liquidating Entity for the purpose of liquidating such Estates and consummating the Plan.  The Post Effective-Date Liquidating Entity shall liquidate such property as soon as commercially practicable.  After the costs and expenses of the Post Effective-Date Liquidating Entity are paid, proceeds of such liquidation shall be applied to the principal balance of the New Prudential Note..

**6.8     Vesting of Assets in Reorganized SW Boston**.  On and after the Effective Date, all property in the Estate of SW Boston, all Causes of Action (except those released pursuant to the Debtors Release) shall vest in Reorganized SW Boston, free and clear of all Liens, Claims, charges, or other encumbrances (except for Liens granted to secure (i) the Prudential Loan Claims under the New Prudential Loan Agreement, and the related loan documents described in the New Prudential Loan Agreement and (ii) the reinstated City Loan).  On and after the Effective Date, except as otherwise provided in this Plan, Reorganized SW Boston may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.  Notwithstanding anything to

25

the contrary in this Plan, Claims against the Debtors or Reorganized SW Boston shall remain the obligations solely of the Debtors or Reorganized SW Boston following the Effective Date.

**6.9** **Cancellation of Securities and Agreements**. On the Effective Date, except as otherwise specifically provided for in this Plan, the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, Certificates, notes, bonds, indentures, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors (except such agreements, Certificates, notes, or other instruments evidencing indebtedness or obligations of the Debtors that are specifically reinstated pursuant to this Plan) shall be released and discharged.

**6.10** **Operations Between the Confirmation Date and the Effective Date**. During the period from the Confirmation Date through and until the Effective Date, the Debtors shall continue to operate their businesses as Debtors-in-Possession, subject to the oversight of the Bankruptcy Court as provided in the Bankruptcy Code, the Bankruptcy Rules and all orders of the Bankruptcy Court that are then in full force and effect.

**6.11** **Restructuring Transactions**. On the Effective Date or as soon as reasonably practicable thereafter, Reorganized SW Boston may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate this Plan, including: (1) the execution and delivery of appropriate certificates of incorporation, bylaws, or other documents containing terms that are consistent with or reasonably necessary to implement the terms of this Plan and that satisfy the requirements of applicable law; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any property, right, liability, duty, or obligation on terms consistent with the terms of this Plan; and (3) all other actions that Reorganized SW Boston determines are necessary or appropriate.

**6.12** **Corporate Action; Amended Articles of Incorporation and Amended Bylaws**. Upon the Effective Date, all actions contemplated by this Plan shall be deemed authorized and approved in all respects. All matters provided for in this Plan involving the corporate structure of the Debtors or Reorganized SW Boston, and any corporate action required by the Debtors or Reorganized SW Boston in connection with this Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors or officers of the Debtors or Reorganized SW Boston.

On the Effective Date, the amended operating agreements, amended trust agreements, amended certificates of incorporation and amended bylaws, or other applicable organizational documents, of Reorganized SW Boston shall be amended and restated and deemed authorized in all respects and shall contain a provision prohibiting the issuance of non-voting equity securities to the extent such provision is required by section 1123(a)(6) of the Bankruptcy Code.

**6.13** **Effectuating Documents; Further Transactions**. On and after the Effective Date, Reorganized SW Boston and the managers, officers and members of the board of directors thereof, is authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be

26

necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of this Plan and the securities issued pursuant to this Plan in the name of and on behalf of Reorganized SW Boston, without the need for any approvals, authorization, or consents except for those expressly required pursuant to this Plan.

**6.14    Exemption from Certain Taxes and Fees**.  To the fullest extent permitted under section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment, and the Confirmation Order shall direct and be deemed to direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.  Such exemption specifically applies, without limitation, to (1) the creation of any mortgage, deed of trust, lien or other security interest; (2) the making or assignment of any lease or sublease; (3) any restructuring transaction authorized by Article 6.9 hereof; (4) the issuance, distribution and/or sale of any of the New Common Stock, the Shareholder Warrants and any other Securities of the Debtors or Reorganized SW Boston, or (5) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with this Plan, including: (a) any merger agreements; (b) agreements of consolidation, restructuring, disposition, liquidation, or dissolution; (c) deeds; (d) bills of sale; or (e) assignments executed in connection with any Restructuring Transaction occurring under this Plan.

**6.15    Preservation of Rights of Action**.  In accordance with section 1123(b) of the Bankruptcy Code, and except where such Causes of Action have been expressly released (including, for the avoidance of doubt, pursuant to the Debtors Release provided by Article 10.3 hereof), Reorganized SW Boston shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Supplement, and Reorganized SW Boston's rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.  Reorganized SW Boston may pursue such Causes of Action, as appropriate, in accordance with the best interests of Reorganized SW Boston.  No Entity may rely on the absence of a specific reference in this Plan or the Plan Supplement to any Cause of Action against them as any indication that the Debtors or Reorganized Debtors, as applicable, did not retain or will not pursue any and all available Causes of Action against them.  Except with respect to Causes of Action as to which the Debtors or Reorganized Debtors have released any Person or Entity on or prior to the Effective Date (pursuant to the Debtors Release or otherwise), the Debtors or Reorganized Debtors, as applicable, expressly reserves all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in this Plan.  Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in this Plan or a Bankruptcy Court order, Reorganized SW Boston expressly reserves all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of Confirmation or Consummation.

27

## ARTICLE 7
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**7.1**    **Assumption and Rejection of Executory Contracts and Unexpired Leases**.
Except as otherwise provided herein, or in any contract, instrument, release, indenture, or other
agreement or document entered into in connection with this Plan, as of the Effective Date, the
Debtors shall be deemed to have assumed each Executory Contract and Unexpired Lease
(including all insurance policies), unless such Executory Contract or Unexpired Lease:  (i)
previously has been assumed or rejected pursuant to a Final Order of the Bankruptcy Court, (ii)
is designated specifically or by category as a contract or lease to be rejected on the Schedule of
Rejected Contracts and Leases, if any, or (iii) is the subject of a separate motion to assume or
reject filed under section 365 of the Bankruptcy Code by the Debtors prior to the Effective Date.
As of and subject to the occurrence of the Effective Date, all contracts identified on the Schedule
of Rejected Contracts and Leases shall be deemed rejected.  Subject to the occurrence of the
Effective Date, entry of the Confirmation Order by the Bankruptcy Court shall constitute
approval of such assumptions and rejections pursuant to sections 365(a) and 1123 of the
Bankruptcy Code.  Each Executory Contract and Unexpired Lease assumed pursuant to this
Article 7 shall revest in and be fully enforceable by the Debtors in accordance with its terms,
except as modified by the provisions of the Plan, or any order of the Bankruptcy Court
authorizing and providing for its assumption or applicable federal law.

Notwithstanding the foregoing paragraph, after the Effective Date, Reorganized SW
Boston shall have the right to terminate, amend, or modify any intercompany contracts, leases, or
other agreements without approval of the Bankruptcy Court.

**7.2**    **Payments Related to Assumption of Executory Contracts and Unexpired
Leases**.  With respect to any Executory Contracts and Unexpired Leases to be assumed by the
Debtors pursuant hereto (including pursuant to Article 7.1 hereof) or otherwise, Cure Claims
shall be satisfied, pursuant to section 365(b) of the Bankruptcy Code, by payment of the Cure
Claims in Cash on the Effective Date or as soon as reasonably practicable thereafter or on such
other terms as the parties to each such Executory Contract or Unexpired Lease may otherwise
agree.  In the event of a dispute regarding: (1) the amount of any Cure Claim; (2) the ability of
Reorganized SW Boston to provide "adequate assurance of future performance" (within the
meaning of section 365(b) of the Bankruptcy Code), if applicable, under the Executory Contract
or the Unexpired Lease to be assumed; or (3) any other matter pertaining to assumption, the Cure
Claims shall be paid following the entry of a Final Order resolving the dispute and approving the
assumption of such Executory Contracts or Unexpired Leases; provided, however, that the
Debtors or Reorganized SW Boston may settle any dispute regarding the amount of any Cure
Claim without any further notice to, or action, order, or approval of, the Bankruptcy Court.

**7.3**    **Claims Arising From Rejection of Executory Contracts or Unexpired Leases**.
All Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, will be
treated as General Unsecured Claims subject to the provisions of Article 4 of the Plan, subject to
any limitation on allowance of such Claims under section 502(b) of the Bankruptcy Code or
otherwise.  Except as otherwise ordered by the Bankruptcy Court, in the event that the rejection
of an Executory Contract or Unexpired Lease by the Debtors pursuant to the Plan results in
damages to the other party or parties to such contract or lease, a Claim for such damages shall be

28

forever barred and shall not be enforceable against the Debtors or Reorganized SW Boston, or their respective properties or interests in property as agents, successors, or assigns, unless a Proof of Claim has been filed with the Bankruptcy Court and served upon counsel for the Debtors on or before the date, and in the form and manner set forth in the order authorizing the rejection.

**7.4** **Intercompany Contracts, Contracts, and Leases Entered Into After the Petition Date**.  On and after the Effective Date, the Debtors, or Reorganized SW Boston, as applicable and in their sole discretion, may perform or continue to perform under Intercompany Contracts, contracts, and leases entered into after the Petition Date by the Debtors in the ordinary course of business.

**7.5** **Modifications, Amendments, Supplements, Restatements, or Other Agreements**.  Unless otherwise provided in this Plan, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or is rejected under this Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

**7.6** **Reservation of Rights**.  Neither the exclusion nor inclusion of any contract or lease in the Plan Supplement, nor anything contained in this Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that Reorganized SW Boston has any liability thereunder.  In the event of a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or Reorganized SW Boston, as applicable, shall have ninety (90) days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease as otherwise provided herein.

# ARTICLE 8
## PROVISIONS GOVERNING DISTRIBUTIONS

**8.1** **Timing and Calculation of Amounts to Be Distributed**.  Except as otherwise provided in this Plan, on the Effective Date or as soon as reasonably practicable thereafter (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such a Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim against the Debtors shall receive the full amount of the distributions that this Plan provides for Allowed Claims or Interests in the applicable Class and in the manner provided herein.  In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  If and to the extent that there are Disputed Claims,

distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article 9 hereof.  Except as otherwise provided herein, Holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for herein, regardless of whether such distributions are delivered on or at any time after the Effective Date.

**8.2**   **Disbursing Agent**.  Except as otherwise provided herein, all distributions under this Plan shall be made by Reorganized SW Boston as Disbursing Agent or such other Entity designated by Reorganized SW Boston as a Disbursing Agent on the Effective Date.  A Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.  In the event that a Disbursing Agent is so ordered, all costs and expenses of procuring any such bond or surety shall be borne by Reorganized SW Boston.

**8.3**   **Rights and Powers of Disbursing Agent**.

(1)   Powers of the Disbursing Agent.  The Disbursing Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under this Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to this Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

(2)   Expenses Incurred On or After the Effective Date.  Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement claims (including reasonable attorney fees and expenses) made by the Disbursing Agent shall be paid in Cash by Reorganized SW Boston on or after the Effective Date.

**8.4**   **Distributions on Account of Claims and Interests Allowed After the Effective Date**.

(1)   Payments and Distributions on Disputed Claims and Disputed Interests.  Distributions made after the Effective Date to Holders of Disputed Claims or Disputed Interests, as applicable, that are not Allowed Claims or Allowed Interests, as applicable, as of the Effective Date but which later become Allowed Claims or Allowed Interests, as applicable, shall be deemed to have been made on the Effective Date.

(2)   Special Rules for Distributions to Holders of Disputed Claims and Disputed Interests.  Notwithstanding any provision otherwise in this Plan and except as may be agreed to by the Debtors or Reorganized SW Boston, on the one hand, and the Holder of a Disputed Claim or Disputed Interests, as applicable, on the other hand, no partial payments and no partial distributions shall be made with respect to any Disputed Claim or Disputed Interest, as applicable, until all Disputed Claims or Disputed Interests held by the Holder of such Disputed Claims or Disputed Interests have become Allowed Claims or Allowed Interests or have otherwise been resolved by settlement or Final Order.

30

**8.5**     **Delivery of Distributions and Undeliverable or Unclaimed Distributions**.

(1)     _Delivery of Distributions in General_.  Except as otherwise provided herein, Reorganized SW Boston shall make distributions to Holders of Allowed Claims on or as soon as reasonably practicable after the Effective Date at the address for each such Holder as indicated on the Books and Records unless superseded by the address set forth in a Proof of Claim or Interest or other pleading Filed by that Holder in the Bankruptcy Court; provided, however, that the manner of such distributions shall be determined at the discretion of Reorganized SW Boston.

(2)     _Undeliverable Distributions and Unclaimed Property_.  In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then current address of such Holder, at which time such distribution shall be made to such Holder without interest; provided, however, such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six (6) months from the date of delivery of the applicable distribution under this Plan.  After such date, all unclaimed property or interests in property shall revert to Reorganized SW Boston (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim or Interest of any Holder to such property or Interest in property shall be discharged and forever barred.

**8.6**     **Distribution Record Date**.  Reorganized SW Boston and the Disbursing Agent (i) will have no obligation to recognize the transfer of, or the sale of any participation in, any Allowed Claim or Allowed Interest, that occurs after the close of business on the Distribution Record Date, and (ii) will be entitled for all purposes herein to recognize, deal with, and distribute to, only those Holders of Allowed Claims and Allowed Interests, as applicable, that are Holders of such Claims or Interests, as applicable, or participants therein, as of the close of business on the Distribution Record Date.

**8.7**     **Compliance with Tax Requirements/Allocations**  In connection with this Plan and all distributions hereunder, to the extent applicable, each Reorganized Debtor shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements. Notwithstanding any provision in this Plan to the contrary, Reorganized SW Boston and the Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under this Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. Reorganized SW Boston reserves the right to allocate all distributions made under this Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens and encumbrances.

Notwithstanding any other provision of this Plan: (i) each Holder of an Allowed Claim or Allowed Interest that is to receive a distribution under this Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations on account of such

31

distribution; and (ii) no Plan distributions shall be required to be made to or on behalf of such Holder pursuant to this Plan unless and until such Holder has made arrangements satisfactory to Reorganized SW Boston for the payment and satisfaction of such tax obligations or has, to Reorganized SW Boston's satisfaction, established an exemption therefrom.

**8.8    Claims Paid or Payable by Third Parties.**

(1)    Claims Paid by Third Parties.  The Debtors or Reorganized SW Boston, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without a Claims objection having to be Filed and without any further notice to, or action, order, or approval of, the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not the Debtors or Reorganized SW Boston.  To the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not the Debtors or Reorganized SW Boston on account of such Claim, such Holder shall, within two (2) weeks of receipt thereof, repay or return the distribution to Reorganized SW Boston, to the extent the Holder's total recovery on account of such Claim from the third party and under this Plan exceeds the amount of such Claim as of the date of any such distribution under this Plan.

(2)    Claims Payable by Third Parties.  No distributions under this Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.  To the extent that one or more of the Debtors' insurers agrees to satisfy in full a Claim (if and to the extent adjudicated by a court of competent jurisdiction or similar process or pursuant to settlement between the applicable parties), then immediately upon such insurers' agreement, such Claim may be expunged without a Claims objection having to be Filed by the Debtors and without any further notice to, or action, order, or approval of, the Bankruptcy Court.

(3)    Applicability of Insurance Policies.  Except as otherwise provided in this Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy, including, but not limited to, provisions related to the timing of payments on account of allowed workers' compensation claims.  Nothing contained in this Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

## ARTICLE 9
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS AND DISPUTED INTERESTS

**9.1    Prosecution of Objections to Claims and Disputed Interests.**  The Debtors or Reorganized SW Boston, as applicable, shall have the exclusive authority to File, settle, compromise, withdraw, or litigate to judgment any objections to Claims and Interests, as applicable, as permitted under this Plan.  From and after the Effective Date, the Debtors and Reorganized SW Boston may settle or compromise any Disputed Claim or Disputed Interest without approval of the Bankruptcy Court.  The Debtors reserve all rights to resolve any

Disputed Claim or Disputed Interest outside the Bankruptcy Court under applicable governing law.

      **9.2**    **Estimation of Contingent or Unliquidated Claims**.  The Debtors or Reorganized SW Boston, as applicable, may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Debtors has previously objected to such Claim or whether the Bankruptcy Court has ruled on any objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal related to any such objection.  In the event the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Claim, the Debtors or Reorganized SW Boston, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.  Each of the aforementioned objection, estimation, and resolution procedures are cumulative and are not exclusive of one another.

      **9.3**    **Allowance of Claims and Interests**.  Except as expressly provided herein, no Claim or Interest shall be deemed Allowed unless and until such Claim or Interest is deemed Allowed under this Plan, or the Bankruptcy Court enters a Final Order in the Chapter 11 Cases allowing such Claim or Interest under section 502 of the Bankruptcy Code.  Except as expressly provided in this Plan or any order entered in the Chapter 11 Cases prior to the Effective Date (including the Confirmation Order), Reorganized SW Boston after the Effective Date will have and retain any and all rights and defenses held by the Debtors with respect to any Claim or Interest as of the Petition Date.

      **9.4**    **No Distributions Pending Allowance**.  Notwithstanding any other provision hereof, if any portion of a Claim is a Disputed Claim, no payment or distribution provided under this Plan shall be made on account of such Disputed Claim unless and until such Disputed Claim becomes an Allowed Claim.

      **9.5**    **Distributions After Allowance**.  To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of this Plan.  As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim the distribution (if any) to which such Holder is entitled under this Plan as of the Effective Date, without any interest to be paid on account of such Claim.

      **9.6**    **No De Minimis Distributions; Residual Cash**.  No distributions under $[25] shall be required to be made pursuant to this Plan.  Any residual cash undistributed for a period of 60 days after the Effective Date, due to the restrictions in this Section 9.6 or otherwise, shall revert and be vested in Reorganized SW Boston free and clear of any claim or interest of any holder of a Claim under the Plan.

LIBNY/5004629.10

## ARTICLE 10
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

**10.1    Discharge of Claims and Termination of Interests.**  Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in this Plan, the distributions, rights, and treatment that are provided in this Plan shall be in full and final satisfaction, settlement, release, and discharge, effective as of the Effective Date, of all Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of its assets or properties, regardless of whether any property shall have been distributed or retained pursuant to this Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim or Proof of Interest based upon such Claim, debt, right, or Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such Claim, debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted this Plan.  Except as otherwise provided herein, any default by the Debtors or its Affiliates with respect to any Claim or Interest that existed immediately prior to or on account of the filing of the Chapter 11 Cases shall be deemed cured on the Effective Date.  The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring, except as otherwise expressly provided in this Plan.

**10.2    Compromise and Settlement of Claims, Interests, and Controversies.** Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to this Plan, the provisions of this Plan shall constitute a good faith compromise of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, its Estate, and Holders of Claims and Interests and is fair, equitable, and reasonable.  In accordance with the provisions of this Plan, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, Reorganized SW Boston may compromise and settle Claims against its and Causes of Action against other Entities.

**10.3    Debtor Release of Prudential.  Notwithstanding anything contained herein to the contrary, on the effective date and effective as of the effective date (such that Reorganized SW Boston will not receive any Claim or Cause of Action released hereunder), for the good and valuable consideration provided by the Debtors Releasee, including: the discharge of debt and all other good and valuable consideration paid pursuant hereto; the Debtors (in their individual capacity and as Debtors in Possession) hereby discharge and release and shall be deemed to have forever provided a full discharge and release to the**

34

Debtors Releasee (and each such Debtor Releasee so released shall be deemed fully released and discharged by the Debtors) and their respective property from any and all causes of action, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, contingent or non-contingent, existing as of the Effective Date in law, at equity, whether for tort, fraud, contract, violations of federal or state securities laws or otherwise, arising from or related in any way to the Debtors or Reorganized SW Boston, including those in any way related to the Chapter 11 Cases or this Plan or agreement related thereto, including those that the Debtors or Reorganized SW Boston would have been legally entitled to assert in their own right or that any Holder of a Claim or an Interest or other Entity would have been legally entitled to assert on behalf of the Debtors or any of their estates; provided, further, that the Debtors specifically waive and release all Claims arising under section 547 of the Bankruptcy Code against Holders of General Unsecured Claims; provided, however, that the foregoing "Debtor Release" shall not operate to waive or release any Causes of Action of the Debtors: (1) against a Debtor Releasee arising from any contractual obligations owed to the Debtors on or after the effective date; or (2) expressly set forth in and preserved by this Plan, the Plan Supplement, or related documents, including, without limitation, any Cause of Action arising under or related to the New Prudential Loan or the New Prudential Loan Agreement.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtors' Release, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the Debtors Release is: (1) in exchange for the good and valuable consideration provided by the Debtors Releasees and the Third Party Releasees; (2) a good faith settlement and compromise of the Claims released by the Debtors Release; (3) in the best interests of the Debtors and all holders of Claims; (4) fair, equitable and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to the Debtors or Reorganized SW Boston asserting any claim or cause of action released pursuant to the Debtor Release.

10.4    Injunction.  Except as otherwise provided in this Plan or the Confirmation Order, but subject to the occurrence of the Effective Date, all Entities who have held, hold or may hold Claims, Interests, Causes of Action or liabilities that: (1) have been discharged pursuant to Article 10.1 hereof; or (2) have been released pursuant to Article 10.3 hereof; are permanently enjoined and precluded, from and after the Effective Date, from: (a) commencing or continuing in any manner any Action or other proceeding of any kind against any Entity so released, discharged, or exculpated (or the property or estate of any entity so released, discharged, or exculpated) on account of or in connection with or with respect to any such released, discharged, or exculpated Claims, Interests, Causes of Action or liabilities; (b) enforcing, levying, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against any entity so released, discharged, or exculpated (or the property or estate of any entity so released, discharged, or exculpated) on account of or in connection with or with respect to any such released, discharged, or exculpated claims, interests, causes of action, or liabilities; (c) creating, perfecting or enforcing any Lien, Claim, or encumbrance of any kind against any entity so released, discharged, or exculpated (or the property or estate of any entity so released, discharged, or exculpated) on account of or in connection with or with respect to any such released,

35

**discharged, or exculpated Claims, Interests, Causes of Action, or liabilities; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from any Entity so released, discharged, or exculpated (or the property or estate of any entity so released, discharged, or exculpated) on account of or in connection with or with respect to any such released, discharged, or exculpated Claims, Interests, Causes of Action or liabilities unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in a Proof of Claim or Interest or otherwise that such Holder asserts, has or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind against any Entity so released, discharged, or exculpated (or the property or estate of any entity so released, discharged, or exculpated) on account of or in connection with or with respect to any such released, discharged, or exculpated Claims, Interests, Causes of Action, or liabilities released or settled pursuant to this Plan; provided, however, that nothing contained herein shall preclude such persons from exercising their rights, or obtaining benefits, pursuant to and consistent with the terms of this Plan.**

      **10.5**   **Setoffs**.  Except as otherwise provided herein, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim or Interest, Reorganized SW Boston may set off against any Allowed Claim or Interest and the distributions to be made pursuant to this Plan on account of such Allowed Claim or Interest (before any distribution is made on account of such Allowed Claim or Interest), any Claims, rights, and Causes of Action of any nature that the Debtors or Reorganized SW Boston, as applicable, may hold against the Holder of such Allowed Claim or Interest, to the extent such Claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to this Plan or otherwise); provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim or Interest pursuant to this Plan shall constitute a waiver or release by Reorganized SW Boston of any such Claims, rights, and Causes of Action that Reorganized SW Boston may possess against such Holder.  In no event shall any Holder of Claims or Interests be entitled to setoff any Claim or Interest against any Claim, right, or Cause of Action of the Debtors or Reorganized SW Boston, as applicable, unless such Holder has Filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 or otherwise.

      **10.6**   **Release of Liens**.  Except as otherwise provided herein or in any contract, instrument, release, or other agreement or document created pursuant to this Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to this Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to Reorganized SW Boston and its successors and assigns.

36

## ARTICLE 11
## CONDITIONS PRECEDENT TO CONFIRMATION
## AND CONSUMMATION OF THE PLAN

**11.1    Conditions Precedent to Confirmation**.  Confirmation of this Plan is subject to entry of the Confirmation Order by the Bankruptcy Court in form and substance acceptable to Prudential with no stay or injunction (or similar prohibition) in effect with respect thereto.

**11.2    Conditions Precedent to Consummation**.  It shall be a condition to consummation of this Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Section 11.3 hereof:

(1)    The Confirmation Order, which shall be in form and substance acceptable to Prudential, shall be a Final Order;

(2)    This Plan and the Plan Documents, each in form and substance acceptable to Prudential, being executed and delivered, and any conditions (other than the occurrence of the Effective Date) contained therein having been satisfied or waived in accordance therewith;

(3)    All authorizations, consents, certifications, approvals, rulings, no-action letters, opinions or other documents or actions required by any law, regulation or order to be received or to occur in order to implement this Plan on the Effective Date shall have been obtained or shall have occurred unless failure to do so will not have a Material Adverse Effect on Reorganized SW Boston;

(4)    All other documents and agreements necessary to implement this Plan on the Effective Date (including any and all Plan Documents) shall have been duly and validly executed and delivered by all parties thereto and all other actions required to be taken in connection with the Effective Date shall have occurred or shall have been otherwise satisfied or waived;

**11.3    Waiver of Conditions Precedent and Bankruptcy Rule 3020(e) Automatic Stay**.  The conditions to consummation of this Plan set forth in this Article 11 may be waived only by Prudential, at any time without leave of or notice to the Bankruptcy Court and without formal action other than proceeding with confirmation of this Plan.  Further, the stay of the Confirmation Order, pursuant to Bankruptcy Rule 3020(e), shall be deemed waived by the Confirmation Order.

If any condition precedent to the Effective Date is waived pursuant to this Article 11.3 and the Effective Date occurs, the waiver of such condition shall benefit from the "mootness doctrine," and the act of consummation of this Plan shall foreclose any ability to challenge this Plan in any court.

**11.4    Effect of Non-Occurrence of Conditions to Consummation**.  If the consummation of this Plan does not occur within 30 days after the Confirmation Date, or by such later date as is acceptable to Prudential in its sole and absolute discretion, this Plan shall be null and void in all respects and: (i) the Confirmation Order shall be vacated and of no further force or effect; (ii) no distributions under this Plan shall be made; (iii) the Debtors and all Holders of

37

Claims and Interests in the Debtors shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred; and (iv) all of the Debtors' obligations with respect to the Claims and Interests shall remain unaffected by this Plan and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors or any other person or to prejudice in any manner the rights of the Debtors or any person in any further proceedings involving the Debtors, and this Plan shall be deemed withdrawn.  Upon such occurrence, the Debtors shall file a written notification with the Bankruptcy Court and serve it upon such parties as the Bankruptcy Court may direct.

## ARTICLE 12
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

**12.1**    **Plan Modification and Other Amendments**.

(1)    Plan Modifications.  This Plan may be amended, modified, or supplemented by Prudential, in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law, without additional disclosure pursuant to section 1125 of the Bankruptcy Code, except as otherwise ordered by the Bankruptcy Court.  In addition, after the Confirmation Date, so long as such action does not materially and adversely affect the treatment of holders of Allowed Claims and Interests pursuant to this Plan, the Debtors may remedy any defect or omission or reconcile any inconsistencies in this Plan, the Plan Documents and/or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and intent of this Plan, and any holder of a Claim or Interest that has accepted this Plan shall be deemed to have accepted this Plan as amended, modified, or supplemented.

(2)    Other Amendments.  Prior to the Effective Date, Prudential may make appropriate technical adjustments and modifications to this Plan without further order or approval of the Bankruptcy Court; provided, however, that, such technical adjustments and modifications do not adversely affect in a material way the treatment of Holders of Claims or Interests under this Plan.

**12.2**    **Effect of Confirmation on Modifications**.  Entry of a Confirmation Order shall mean that all modifications or amendments to this Plan occurring after the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

**12.3**    **Revocation or Withdrawal of the Plan**.  Prudential reserves the right to revoke or withdraw this Plan prior to the Confirmation Date.  If Prudential revokes or withdraws this Plan, or if Confirmation or Consummation does not occur, then: (1) this Plan shall be null and void in all respects; (2) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts and Unexpired Leases effected by this Plan, and any document or agreement executed pursuant to this Plan, shall be deemed null and void; and (3) nothing contained in this Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of the Debtors or any other Entity; or

LIBNY/5004629.10

(c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Entity.

# ARTICLE 13
# RETENTION OF JURISDICTION

Pursuant to sections 105(a) and 1142 of the Bankruptcy Code and notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain such jurisdiction over the Chapter 11 Cases and all matters arising out of, or related to, the Chapter 11 Cases and this Plan, including jurisdiction to:

(1)     allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

(2)     decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or this Plan;

(3)     resolve any matters related to: (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease or with respect to which a Debtors may be liable in any manner and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Rejection Claims, Cure Claims pursuant to section 365 of the Bankruptcy Code or any other matter related to such Executory Contract or Unexpired Lease; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) Reorganized SW Boston amending, modifying, or supplementing, after the Effective Date, pursuant to Article V, any Executory Contracts or Unexpired Leases to the list of Executory Contracts and Unexpired Leases to be assumed or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

(4)     ensure that distributions to Holders of Allowed Claims and Interests are accomplished pursuant to the provisions of this Plan;

(5)     adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving the Debtors that may be pending on the Effective Date;

(6)     adjudicate, decide, or resolve any and all matters related to Causes of Action;

(7)     adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

(8)     enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of this Plan and all contracts, instruments,

LIBNY/5004629.10

releases, indentures, and other agreements or documents created in connection with this Plan or the Plan Supplement;

(9) enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

(10) resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the consummation, interpretation, or enforcement of this Plan or any Entity's obligations incurred in connection with this Plan;

(11) issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of this Plan;

(12) resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the discharge, releases, injunctions, exculpations, and other provisions contained in Article VIII and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

(13) resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to Article 8.8;

(14) enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

(15) determine any other matters that may arise in connection with or relate to this Plan, the Plan Supplement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with this Plan;

(16) adjudicate any and all disputes arising from or relating to distributions under this Plan;

(17) consider any modifications of this Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

(18) determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

(19) hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan, or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with this Plan, including, but not limited to, the Plan Documents;

(20) hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

LIBNY/5004629.10

(21)    hear and determine all disputes involving the existence, nature, or scope of the Debtors' discharge, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

(22)    enforce all orders previously entered by the Bankruptcy Court;

(23)    hear any other matter not inconsistent with the Bankruptcy Code;

(24)    hear any matter regarding the recovery of assets of the Debtors and property of its estate, wherever located; and

(25)    enter an order concluding or closing the Chapter 11 Cases.

## ARTICLE 14
## MISCELLANEOUS PROVISIONS

**14.1    Immediate Binding Effect**.  Subject to Article 11 and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of this Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, Reorganized SW Boston, and any and all Holders of Claims or Interests (irrespective of whether such Holders of Claims or Interests are deemed to have accepted this Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in this Plan, each Entity acquiring property under this Plan, and any and all non-Debtors parties to Executory Contracts and Unexpired Leases with the Debtors.

**14.2    Additional Documents**.  On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.  The Debtors or Reorganized Debtors, as applicable, and all Holders of Claims or Interests receiving distributions pursuant to this Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

**14.3    Payment of Statutory Fees**.  All fees payable pursuant to section 1930(a) of the Judicial Code shall be paid for each quarter (including any fraction thereof) until the Chapter 11 Cases is converted, dismissed, or closed, whichever occurs first.

**14.4    Section 1125(e) of the Bankruptcy Code**.  Prudential has, and upon confirmation of this Plan shall be deemed to have, solicited acceptances of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, and the Debtors (and its affiliates, agents, directors, officers, employees, advisors, and attorneys) have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer, issuance, sale, and purchase of the securities offered and sold under this Plan, and therefore are not, and on account of such offer, issuance, sale, solicitation, and/or purchase will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation

41

of acceptances or rejections of this Plan or offer, issuance, sale, or purchase of the securities offered and sold under this Plan.

**14.5** **Dissolution of Committee**.  On the Effective Date, the Committee shall dissolve and members thereof shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases.

**14.6** **Termination of Professionals**.  On the Effective Date, the engagement of each Professional retained by the Debtors and the Creditors' Committee, if any, shall be terminated without further order of the Bankruptcy Court or act of the parties; provided, however, such Professionals shall be entitled to prosecute their respective Fee Claims and represent their respective constituents with respect to applications for payment of such Fee Claims and Reorganized SW Boston shall be responsible for the fees, costs and expenses associated with the prosecution of such Fee Claims.  Nothing herein shall preclude Reorganized SW Boston from engaging a Professional on and after the Effective Date in the same capacity as such Professional was engaged prior to the Effective Date.

**14.7** **No Admissions**.  As to contested matters, adversary proceedings and other causes of action or threatened causes of action, this Plan shall not constitute or be construed as an admission of any fact or liability, stipulation, or waiver, but rather as a statement made in settlement negotiations.  Prior to the Effective Date, this Plan shall not be admissible in any non-bankruptcy proceeding.  This Plan shall not be construed to be conclusive advice on the tax, securities, and other legal effects of the Plan as to Holders of Claims against, and Equity Interests in, any of the Debtors, as Debtors and Debtors-in-Possession in these Chapter 11 Cases.

**14.8** **Reservation of Rights**.  Except as expressly set forth in this Plan, this Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order.  Neither this Plan, any statement or provision contained in this Plan, nor any action taken or not taken by any Debtors with respect to this Plan, the Prospectus, the Proxy, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtors with respect to the Holders of Claims or Interests prior to the Effective Date.

**14.9** **Successors and Assigns**.  The rights, benefits, and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, affiliate, officer, director, manager, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

**14.10** **Service of Documents**.  After the Effective Date, any pleading, notice, or other document required by this Plan to be served on or delivered to Reorganized SW Boston shall be served on:

The Prudential Insurance Company of America
Attn:  Joan N. Hayden, Esq.
8 Campus Drive
Parsippany, New Jersey 07054

Goodwin Procter LLP
Attn: Emanuel C. Grillo
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405

42

After the Effective Date, the Debtors may, in its sole discretion, notify Entities that, in order to continue receiving documents pursuant to Bankruptcy Rule 2002, such Entities must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Debtors is authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

**14.11   Term of Injunctions or Stays**.  Unless otherwise provided in this Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in this Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in this Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

**14.12   Entire Agreement**.  Except as otherwise indicated, this Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into this Plan.

**14.13   Nonseverability of Plan Provisions**.  If, prior to Confirmation, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to this Plan and may not be deleted or modified without the Debtors' consent; and (3) nonseverable and mutually dependent.  Notwithstanding anything to the contrary contained in this Section L, in the event of any such holding, alteration or interpretation, the Debtors must obtain the consent of the Requisite Holders in order to seek confirmation of this Plan as so Amended, revised or altered.

**14.14   Plan Controls Disclosure Statement; Confirmation Order Controls Plan**.  To the extent this Plan is inconsistent with the Disclosure Statement, the provisions of this Plan will be controlling. To the extent the Confirmation Order is inconsistent with this Plan, the provisions of the Confirmation Order will be controlling.

**14.15   Governing Law**.  Except to the extent the Bankruptcy Code, the Bankruptcy Rules, or other federal laws apply, the rights and obligations arising under the Plan shall be governed by the laws of the Commonwealth of Massachusetts, without giving effect to principles of conflicts of laws.

43

**14.16** <u>**Courts of Competent Jurisdiction**</u>. If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of the Plan, such abstention, refusal or failure of jurisdiction will have no effect upon and will not control, prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

Dated: June 27, 2011
      Boston, Massachusetts

                Respectfully submitted,

                THE PRUDENTIAL INSURANCE COMPANY OF
                AMERICA, ON BEHALF AND SOLELY FOR THE
                BENEFIT OF, AND WITH ITS LIABILITY LIMITED
                TO THE ASSETS OF, ITS INSURANCE COMPANY
                SEPARATE ACCOUNT, PRISA

                By:   /s/ Joanna Mulford          
                    Name:  Joanna Mulford
                    Title:  Vice President

                By:  */s/ Gina L. Martin*     
                Gina L. Martin (BBO# 643801)
                GOODWIN PROCTER LLP
                Exchange Place
                53 State Street
                Boston, Massachusetts 02109
                Telephone (617) 570-1000
                Facsimile (617) 523-1231
                Email: gmartin@goodwinprocter.com

                -and-

                Emanuel C. Grillo
                GOODWIN PROCTER LLP
                The New York Times Building
                620 Eighth Avenue
                New York, New York  10018
                Telephone (212) 813-8800
                Facsimile (212) 355-3333

LIBNY/5004629.10